1346

Tommie SUMMERS and Helen Summers, Respondents v. HARRISON CONSTRUCTION, Alwin Harrison, and the Lexington County Department of Planning and Development, Defendants. Of whom the Lexington County Department of Planning and Development is the Appellant.

Appeal of LEXINGTON COUNTY DEPARTMENT OF PLANNING AND DEVELOPMENT.

(381 S. E. (2d) 493)

Court of Appeals

452

*Susan P. McWilliams*, of *Nexsen, Pruet, Jacobs & Pollard*, Columbia, *for appellant.*

*Frederick I. Hall, III*, of Lexington, *for respondents.*

Heard April 18, 1989.

Decided June 5, 1989.

CURETON, Judge:

This case concerns the renovation of a residence. Tommie and Helen Summers entered into a contract with Alwin Harrison and Harrison Construction dated December 10, 1985, for the renovation of their home. Harrison began work in either June or July of 1986. He applied for and received a building permit in the name of Tommie Summers from the Lexington County Department of Planning and Development. The renovation work was poorly performed and never completed although Harrison was paid over $16,000 by the Summers.

The Summers sued Harrison and the Department of Planning. The jury returned a verdict in their favor. The issues on appeal concern only the Department. The Summers sued the Department under the South Carolina Tort Claims Act alleging the Department was grossly negligent in issuing a

building permit to Harrison because the permit was obtained in violation of the rules and regulations of the South Carolina Residential Home Builders Commission. The Department raised numerous defenses basically arguing that Summers had no cause of action against it for the issuance of the permit. The Department appeals the denial of its motions for directed verdict, judgment notwithstanding the verdict, and for a new trial. We reverse.

In ruling on motions for directed verdict and judgment notwithstanding the verdict the trial court is required to view the evidence and the inferences which can reasonably be drawn from it in the light most favorable to the party opposing the motion. The motion should be denied if more than one inference can be drawn from the evidence. *Felder v. K-Mart Corp.*, 297 S. C. 446, 377 S. E. (2d) 332 (1989). On appeal of an action at law tried by a jury the jurisdiction of this court extends only to correction of errors of law and a factual finding by the jury will not be disturbed if there is any evidence to support it. *Id.; Glover v. North Carolina Mutual Life Ins. Co.*, 295 S. C. 251, 368 S. E. (2d) 68 (Ct. App. 1988).

Viewing the evidence in the light most favorable to the Summers, they hired Harrison based upon a referral from another person. Harrison gave them a proposal for the renovations and a contract was executed. The Summers testified Harrison told them he was a qualified, licensed, bonded contractor although they knew nothing about his reputation and did no investigation of his background. Concerning the building permit, Tommie Summers testified as follows:

Q: Did you apply for the building permit in this case?
A: No, ma'am.
Q: Who did?
A: He went and got it himself.
Q: All right. Did you expect him to do that as part of his contract?
A: I didn't know he had to have one but I expected him to have.
Q: You expected him to get one.
A: But not on my consent.
Q: All right. How did you expect him to get one?
A: If he needed one he had to have one.

Harrison obtained the building permit in the name of Tommie Summers from the Department. Harrison was not a licensed residential home builder and the permit was issued to him as the agent of Summers. The representatives of the Department testified they did not talk with the Summers or obtain any additional evidence of agency other than Harrison's signature on the application for the permit. There is evidence Harrison left the job unfinished after obtaining over $16,000 from the Summers. An expert witness testified there were defects in the work and he gave an estimate of the cost to correct the defects and finish the job.

The Summers cite Section 15-78-60(12) of the South Carolina Code as a basis for their suit against the Department. This section is part of the South Carolina Tort Claims Act. It provides as follows:

> The governmental entity is not liable for a loss resulting from:
> (12) licensing powers or functions, including, but limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority except when the power or function is exercised in a grossly negligent manner.

The South Carolina Tort Claims Act does not create causes of action. Rather, it removes the common law bar of sovereign immunity in certain circumstances, but only to the extent mandated by the Act. The legislature has indicated that liability under the Act is based upon "the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Section 15-78-20(a). Further, the provisions relating to limitations on and exemptions to liability are to be liberally construed in favor of limiting the liability of the state. Section 15-78-20(f).

The elements of a tort action for negligence are (1) a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty of care by negligent act or omission; and (3) damage to the plaintiff proximately resulting from the breach. *Andrews v. Piedmont Air Lines*, 297 S. C. 367, 377

S. E. (2d) 127 (Ct. App. 1989). If any of these elements is absent a negligence claim is not stated. *Id.*

Our analysis must begin with the question of whether the Department owed the Summers a duty of care. The common law does not generally impose a duty on a person to act. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Rayfield v. S. C. Dept. of Corrections,* 297 S. C. 95, 100, 374 S. E. (2d) 910, 913 (Ct. App. 1988). In this case, the duty purportedly arises from statute. Chapter 59 of Title 40 of the South Carolina Code deals with residential home builders. Generally, residential home builders are required to be licensed. The chapter provides for the licensing process as well as penalties for failure to procure a license. Section 40-59-160 is the provision in issue. It provides, in part, as follows:

> It is the duty of the building official, or other authority charged with the duty of issuing building or similar permits, ... to refuse to issue a permit for any undertaking which would classify the applicant as a residential home builder under the provision of this chapter unless the applicant has furnished evidence that he is either licensed as required by this chapter or exempt from the requirements of this chapter.

The Summers contend the Department breached the duty of care imposed by this section by acting in a grossly negligent manner in issuing the building permit to Harrison and this action was a proximate cause of harm to them.

In order to establish a duty of care arising from a statute a plaintiff must show (1) that the essential purpose of the statute is to protect from the kind of harm suffered by the plaintiff; and (2) that he is a member of the class of persons the statute is intended to protect. *Rayfield,* 297 S. C. at 100, 374 S. E. (2d) at 914. Of further importance to this case are the concepts of public duty and special duty. The "public duty" rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public. Such statutes create no duty of care towards

individual members of the general public. *Rayfield*, 297 S. C. at 95, 374 S. E. (2d) at 915; *Jensen v. S. C. Dept. of Social Services*, 297 S. C. 323, 377 S. E. (2d) 102 (Ct. App. 1988). However, a statute may have the essential purpose of protecting identifiable individuals from a particular harm and the statute then creates a "special duty" to support a negligence action.[1] To determine if a statute creates a special duty of a public officer to the plaintiff the court must examine the statute and the facts of the case. A special duty exists if: (1) an essential purpose of the statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office. *Id.*

We find Section 40-59-160 creates no special duty flowing from the Department to the Summers. The chapter on residential home builders is designed to benefit the public in general by insuring that only licensed builders perform residential building. The duty to issue a building permit to qualified applicants only does not impose upon a public official the responsibility to guard against poor performance in construction. The Department has no supervision or control over the performance of the work.

Because we find no duty of care from the Department to the Summers the decision of the trial court is reversed as regards liability of the Department to the Summers. We need not rule on the Department's other grounds for reversal.

Reversed.

GARDNER and GOOLSBY, JJ., concur.

---

[1] It has been observed that the very nature of a sovereign's obligations to its people make this distinction crucial, and that to hold otherwise would expose the sovereign to liability for practically every action taken by it. 57 Am. Jur. (2d) *Municipal, County, School and State Tort Liability* Section 140 (1988).