23974

BRADY DEVELOPMENT CO., INC., Respondent v. The TOWN OF HILTON HEAD ISLAND and Hilton Head No. 1 Public Service District, of which only the Town of Hilton Head Island is the Appellant.

(439 S.E. (2d) 266)

Supreme Court

*Charles E. Carpenter, Jr.* and *Deborah L. Harrison,* both of *Richardson, Plowden, Grier and Howser,* Columbia, and *James S. Gibson, Jr.* of *Howell, Gibson and Hughes,* Beaufort, *for appellant.*

*Drew A. Laughlin* and *John R.C. Bowen,* both of *Laughlin, Bowen & Smoot,* Hilton Head Island, and *Edward M. Woodward* of *Woodward, Leventis, Unger, Daves, Herndon & Cothran,* Columbia, *for respondent.*

Heard Nov. 16, 1993.

Decided Dec. 20, 1993.

Reh. Den. Jan. 19, 1994.

LITTLEJOHN, Acting Associate Justice:

The Town of Hilton Head (the Town) contends that the trial judge erred in ruling that the Town owed Brady Development Co., Inc. (Brady) a special duty in the administration of its Development Standards Ordinance. The jury found for Brady in the amount of $215,000 actual damages. The Town argues that the trial judge erred in denying its motions for a directed verdict. We agree and reverse.

## I. *Facts*

On December 10, 1984, the Hilton Head Company (Company), developers of a 244-lot single-family subdivision known as Indigo Run Plantation Phase III, applied for approval of its final development plan in accordance with Hilton Head Development Standards Ordinance §§ 16-7-10 to -1212 (Development Standards Ordinance). The Company submitted a letter of commitment from the Public Service District to document that water and sewer services would be available. Based on this representation, the Town issued a "construction only" development permit to the Company on February 14, 1985.

To obtain a permit to sell lots before the completion of the required subdivision improvements, the Company was required to post a letter of credit for $2,713,563 to guarantee the

completion of the development as required by the Development Standards Ordinance. The Company posted the letter and received approval to sell lots in May, 1985. Between June and December of 1985, the Town allowed the Company to draw down on the letter of credit as the improvements were completed. Both DHEC and the Town Engineer approved the completed water and sewer infrastructure. However, the Public Service District refused to approve the systems for operation because the Company went bankrupt without paying the construction fee.

In June of 1985, Brady contracted to purchase a lot and hired Thomas Sobczak (Sobczak) to build a house on the property. Before he began construction, Sobczak tried to arrange for temporary utility hookups, but the Public Service District informed him that water and sewer services were not available and no date could be given for their availability. After discussing this problem, Brady told Sobczak to proceed with the construction. Without permission from the Public Service District, Sobczak connected lines to the Public Service District water and began construction.

Several times during construction, Sobczak went to the Public Service District to inquire about the water system and was told that the services were not available. In May of 1986, the utility company refused to provide permanent power because the water system was not available. Although the house was substantially completed, Sobczak was forced to stop work. The vacant house was vandalized and eventually burned.

On May 23, 1990, Brady filed this action alleging, among other things, that the Town had negligently administered the Development Standards Ordinance. At trial, the Town moved for a directed verdict on the ground that the Development Standards Ordinance did not create special duty owed to Brady individually.[1] The trial judge denied the Town's motion, finding that the Town as a matter of law owed a special duty to Brady under this ordinance. The trial judge also denied the Town's motion for a directed verdict based on assumption of

---

[1] This cause of action arose between *McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985) (abolishing sovereign immunity), and the enactment of the South Carolina Torts Claim Act.

the risk. The jury returned a verdict for Brady. The Town appeals.

## II. *Discussion*

The Town contends that the trial judge erred in ruling as a matter of law that it owed Brady a special duty of care in issuing a development permit under the Development Standards Ordinance. We agree.

Public officials are generally not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than anyone individually. *Jensen v. Anderson County Dept. of Social Services*, 304 S.C. 195, 199, 403 S.E. (2d) 615, 617 (1991). However, an exception to this general rule exists when a special duty is owed to an individual rather than the public only. *Id.* at 200, 403 S.E. (2d) at 617. To determine if a special duty arises from a statute, a court must find:

1) an essential purpose of the statute is to protect against a particular kind of harm;
2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;
3) the class of persons the statute intends to protect is identifiable before the fact;
4) the plaintiff is a person within the protected class;
5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and
6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Id.; Bellamy v. Brown*, 305 S.C. 291, 408 S.E. (2d) 219 (1991).[2] The trial judge ruled that each of these elements had been proved as a matter of law.

---

[2] As in *Jensen*, we note that although this special duty analysis is applicable to this case, subsequent cases controlled by the South Carolina Tort Claims Act, enacted after this cause of action arose, may require slightly different analysis. *See Jensen v. Anderson County Dept. of Social Services*, 304 S.C. 195, 201 n. 2, 403 S.E. (2d) 615, 618 n. 2 (1991).

Section 16-7-10, the preamble of the Development Standards Ordinance, states:

> The town council finds that the health, safety and welfare of the public is in actual danger ... if development is allowed to continue without limitation

Additionally, Development Standards Ordinance section 16-7-113 provides:

> The purpose of this chapter is to promote the public health, safety and general welfare; to preserve the environmental, historical and social heritage and character of the town; to protect public, private, and institutional investment; and to facilitate the timely and adequate provision of transportation, water, sewage disposal, schools, parks and other requirements.

We hold that the Development Standards Ordinance does not create a special duty to Brady. The essential purpose of the ordinance is to protect the public from the dangers of overdevelopment on the Island of Hilton Head. Brady argues that the essential purpose of the ordinance is to protect those who buy lots, building sites and buildings because the ordinance requires improvements and services agreements to be in existence or a surety guaranteeing these services for a development permit to be granted. To recognize such a duty would make the Town substantially an insurer of all developments it undertook to inspect and control through its Development Standards Ordinance and would likely discourage all efforts at such control. *See Hannon v. Counihan,* 54 Ill. App. (3d) 509, 12 Ill. Dec. 210, 369 N.E. (2d) 917 (1977) (to recognize a special duty for the city in the administration of its building codes would make a municipality substantially an insurer of all construction it undertook to inspect and control through its building codes and would discourage all such efforts at such control); *See also Summers v. Harrison Constr.,* 298 S.C. 451, 381 S.E. (2d) 493 (Ct. App. 1989) (the duty to issue a building permit to only qualified applicants does not impose upon public officials the responsibility to guard against poor performance in construction). Accordingly,

we hold that the trial judge erred in ruling that the Development Standards Ordinance created a special duty.[3]

The Town next contends that even if it could be held liable under the Development Standards Ordinance, the trial judge erred in denying its motions for a directed verdict and judgment notwithstanding the verdict on the ground that Brady was barred from recovery by assumption of the risk. We agree.

In deciding motions for a directed verdict or judgment notwithstanding the verdict, the trial judge must consider the evidence in the light most favorable to the nonmoving party. *Dunsil v. E.M. Jones Chevrolet Co.*, 268 S.C. 291, 233 S.E. (2d) 101 (1977). If only one reasonable inference can be drawn from the evidence, the motion must be granted. *Young v. Tide Craft Inc.*, 270 S.C. 453, 242 S.E. (2d) 671 (1978).

As required by federal law, Brady was given a HUD report which contained the following warnings:

> THE CENTRAL WATER SYSTEM SERVING THE DEVELOPMENT HAS NOT YET BEEN CONSTRUCTED; THEREFORE, THERE IS NOT NOW SUFFICIENT CAPACITY TO SERVE ANY OF THE LOTS IN THE SUBDIVISION. . . .
>
> THERE IS NO FINANCIAL ASSURANCE OF COMPLETION OF THE PORTION OF THE CENTRAL WATER SYSTEM SERVING THE LOTS COVERED BY THIS PROPERTY REPORT. NO FUNDS HAVE BEEN SET ASIDE IN AN ESCROW OR TRUST ACCOUNT NOR HAVE ANY OF THE FINANCIAL ARRANGEMENTS BEEN MADE TO ASSURE COMPLETION OF THE WATER SYSTEM. . . .
>
> SINCE THE REQUIRED CERTIFICATION FROM THE SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL FOR THE USE AND OPERATION OF THE CENTRAL WATER SYSTEM HAS NOT BEEN OBTAINED,

---

[3] We note that because no genuine issue of material fact existed, this issue should have been decided on summary judgment. *See Tom Jenkins Realty, Inc. v. Hilton*, 278 S.C. 624, 300 S.E. (2d) 594 (1983) (summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law).

THERE IS NO ASSURANCE THAT THE SYSTEM CAN BE USED.

A plaintiff is said to have assumed the risk as a matter of law when it appears that the plaintiff freely and voluntarily exposed himself to a known danger and understood and appreciated the danger. *Strange v. S.C. Dept. of Highways and Public Transp.*, 307 S.C. 161, 414 S.E. (2d) 138 (1992). Prior to purchasing the lot, Brady read the aforementioned warnings contained in the HUD report. Brady testified that he knew that building a house in a subdivision that does not have water and sewer was taking a risk. By purchasing the lot under these circumstances, Brady freely and voluntarily exposed himself to the danger that water and sewer would never be provided. The only reasonable inference that can be drawn from this evidence is that Brady assumed this risk. Accordingly, we hold that the trial judge erred in denying both motions.

Our holding renders it unnecessary to rule on the Town's remaining exceptions. For the foregoing reasons, the judgment of the trial court is

Reversed.

CHANDLER, A.C.J., and FINNEY, TOAL and MOORE, JJ., concur.