**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FLORIDA AUTO AUCTION OF ORLANDO,
INCORPORATED, d/b/a Lakeland Auto
Auction, as successor in interest to
the claims of Lakeland Auto
Auction, Incorporated; FLORIDA
AUTO AUCTION OF ORLANDO,
INCORPORATED, d/b/a Imperial Auto
Auction of Orlando, Incorporated,
as successor in interest to the claims
of Florida Auction Services
Corporation, d/b/a Imperial Auto
Auction of Orlando; CENTENNIAL
CASUALTY COMPANY, as subrogee of
claims of ADT Automotive,
Incorporated, formerly doing

business as West Palm Beach Auto           No. 95-1271
Auction, Incorporated; FLORIDA
AUTO AUCTION OF ORLANDO,
INCORPORATED; CENTENNIAL
CASUALTY COMPANY, as subrogee of
the claims of ADT Automotive,
Incorporated, formerly doing
business as Orange County Auto
Auction, Incorporated, now known
as Greater Orlando Auto Auction,
Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,
Defendant-Appellant.

FLORIDA AUTO AUCTION OF ORLANDO,
INCORPORATED, d/b/a Lakeland Auto
Auction, as successor in interest to
the claims of Lakeland Auto
Auction, Incorporated; FLORIDA
AUTO AUCTION OF ORLANDO,
INCORPORATED, d/b/a Imperial Auto
Auction of Orlando, Incorporated,
as successor in interest to the claims
of Florida Auction Services
Corporation, d/b/a Imperial Auto
Auction of Orlando; CENTENNIAL
CASUALTY COMPANY, as subrogee of
claims of ADT Automotive,
Incorporated, formerly doing

business as West Palm Beach Auto
Auction, Incorporated; FLORIDA
AUTO AUCTION OF ORLANDO,
INCORPORATED; CENTENNIAL
CASUALTY COMPANY, as subrogee of
claims of ADT Automotive,
Incorporated, formerly doing
business as Orange County Auto
Auction, Incorporated, now known
as Greater Orlando Auto Auction,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

No. 95-1347

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-92-2537-2-18, CA-92-2535-2-18, CA-92-2536-2-18,
CA-92-2538-2-18, CA-92-2539-2-18)

2

Argued: November 1, 1995

Decided: January 31, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

_____

Reversed in part and affirmed in part by published opinion. Judge Murnaghan wrote the opinion, in which Judge Motz and Senior Judge Young joined.

_____

**COUNSEL**

**ARGUED:** Deborah Ruth Kant, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Donald William Tyler, Sr., TYLER, CASSELL, JACKSON, PEACE & SILVER, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, J. Preston Strom, Jr., United States Attorney, Robert S. Greenspan, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. M. Alan Peace, TYLER, CASSELL, JACKSON, PEACE & SILVER, L.L.P., Columbia, South Carolina; Charles R. Stepter, Jr., FISHBACK, DOMINICK, BENNETT, STEPTER, ARDAMAN & BONUS, Orlando, Florida, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Appellees, automobile auctioneers, sued Appellant, the Federal Government, claiming that United States Customs officials committed the torts of negligence and conversion when they allowed automobiles to be exported without requiring presentation of the certificates

of title. The district court granted the Government's motion for summary judgment on Appellees' conversion claim, but held that the Federal Tort Claims Act permitted Appellees to sue the Government for breach of a duty seemingly imposed on it by Customs regulations. Following a bench trial, the court held that Customs officials had behaved negligently, and awarded Appellees damages exceeding $400,000. We reverse in part and affirm in part.

I.

Appellees conduct automobile auctions in the State of Florida, selling used cars to wholesale dealers. Appellees review the credit histories of all dealers participating in a given auction, then determine the method of payment that each will be permitted to use. While some dealers are required to pay cash to Appellees immediately upon making a purchase, many others are allowed to submit "sight drafts." A sight draft is a check-like method of payment commonly used by automobile auctioneers nationwide. When a sight draft is used, Appellees deliver a bill of sale and the purchased automobiles to the purchaser, then forward a copy of the sight draft and the certificates of title to the purchaser's bank. Once the bank receives the sight draft, the purchaser is expected to authorize the bank to make payment on its behalf. If such payment is indeed authorized, the purchaser's bank delivers the certificates of title to the purchaser; if payment is refused, the certificates are returned to Appellees.

In January 1990, Appellees sold numerous cars to Preowned Cars, Inc., a company with which Appellees had been dealing for more than three years. Preowned was permitted to submit sight drafts to Appellees promising payment of approximately $600,000. Soon thereafter, Preowned shipped the cars to Charleston, South Carolina, in order to export the vehicles to Saudi Arabia. Despite the provisions of 19 C.F.R. § 192.2(b)--a federal regulation which states that exporters must present original or certified copies of certificates of title to Customs officials before automobiles may be transported out of the United States[1]--Customs officials permitted the exportation after

_____

[1] An exception to this requirement is made if compliance with a state statutory requirement makes the certificates of title unavailable. 19 C.F.R. § 192.2(b). The Government has not contended that such a statute applies in the instant case.

4

receiving only a copy of the bill of sale. At about that same time, Appellees learned that Preowned had refused to authorize its bank to make payment against the sight drafts.

After proving unable to secure payment from Preowned, Appellees filed suit in federal district court, claiming entitlement to damages under theories of conversion and negligence. The district court granted the Government's motion for summary judgment on Appellees' conversion claim, finding that, under South Carolina law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights," see Powell v. A.K. Brown Motor Co., 20 S.E.2d 636, 637 (S.C. 1942), and that Customs officials never possessed the automobiles or exercised "any of the rights of ownership over the automobiles in question." Even if Customs officials had taken possession of the cars, the district court reasoned, the Federal Tort Claims Act's waiver of sovereign immunity would have been deemed rescinded by 28 U.S.C. § 2680(c), which provides that the Act is inapplicable to claims "arising in respect of . . . the detention of any goods or merchandise by any officer of customs."

With respect to Appellees' negligence claim, however, the district court denied the Government's motion for summary judgment. Finding that Customs officials have a regulatory obligation to require presentation of certificates of title before allowing automobiles to be exported and that Customs officials did not demand such certificates in the instant case, the court held that the Government's failure to require presentation of the certificates was actionable under a state-law negligence theory of liability, and that jurisdiction under the Federal Tort Claims Act was therefore proper. The district court subsequently found the Government liable for negligence and awarded Appellees damages exceeding $400,000.

The Government has appealed the district court's denial of its motion for summary judgment on Appellees' negligence claim. Appellees have cross-appealed the district court's grant of summary judgment to the Government on their conversion claim.

5

Grants and denials of motions for summary judgment are reviewed de novo. Henson v. Liggett Group, Inc. , 61 F.3d 270, 274 (4th Cir. 1995).

II.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). Through the Federal Tort Claims Act (FTCA), Congress has provided that the Federal Government may be sued in federal district courts

> for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1988); see also 28 U.S.C. § 2674 (1988) ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). The Act does not create new causes of action; "the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992). Instead, the Act "only serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Id.; see also Rayonier, Inc. v. United States, 352 U.S. 315, 319 (1957) (stating that, as in all other cases in which the Federal Government claims immunity from suit in tort, when the performance of a uniquely governmental function gave rise to the claimed harm, the court must simply determine "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred").

Under Goldstar and like cases, there are therefore two instances in which the FTCA would permit Appellees to sue the Government for

6

negligence as a result of Customs officials' failure to enforce federal regulations. First, the suit would be permitted if Appellees showed that "the alleged breach of duty is tortious under state law." See Goldstar, 967 F.2d at 969. Second, the suit would be permitted if Appellees demonstrated that the Government had breached a duty imposed by federal law that is similar or analogous to a duty imposed by state law. See id.

## A. TORTIOUS BREACH OF DUTY UNDER STATE LAW

### 1. Violation of a Duty Imposed by Federal Regulations

To make out a claim of negligence under South Carolina law, a plaintiff "must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." Andrews v. Piedmont Air Lines, 377 S.E.2d 127, 128 (S.C. Ct. App. 1989). Ordinarily, under the State's "public-duty doctrine," public officials are "not liable to individuals for their negligence in discharging public duties as the duty is owed to the public at large rather than[to] anyone individually." Jensen v. Anderson County Dep't of Social Services, 403 S.E.2d 615, 617 (S.C. 1991). In the case at bar, the district court nevertheless held that Appellees' negligence claim should go to the trier of fact. The district judge reviewed Summers v. Harrison Construction, 381 S.E.2d 493 (S.C. Ct. App. 1989), to determine under what circumstances South Carolina courts find that a statute or regulation establishes a special duty of care by which government officials must abide in their dealings with the general public, and may violate only upon pain of being found liable for negligence. The court concluded that the various requirements had been met.[2]

_____

[2] In its brief to this court, the Government insisted that breach of any duty imposed by 19 C.F.R. § 192.2(b) could not give rise to a state-law claim of negligence. "[B]ecause federal regulations owe their force and effect to federal and not state law," the Government contended, "they cannot serve as the basis for liability under the FTCA." Appellant's Brief at 9-10. The Government's argument (an argument from which it attempted to distance itself during oral arguments) is wholly without merit. In In re Sabin Oral Polio Vaccine Prods. Litig., 984 F.2d 124, 127-28 (4th Cir. 1993) (per curiam), for example, we affirmed the district

In Summers, the South Carolina Court of Appeals stated that "statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public," and that "[s]uch statutes create no duty of care towards individual members of the general public." 381 S.E.2d at 496. The court went on to say, though, that a "special duty" to particular individuals may be created by such a statute when

> (1) an essential purpose of the statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

Id. In the instant case, the district court concluded that an essential purpose of the regulation is to protect against a particular kind of harm (unlawful exportation of vehicles), the regulation imposed on

_____

court's finding that violation of federal oral polio vaccine regulations could give rise to negligence per se liability under state law. See In re Sabin, 774 F. Supp. 952, 956 (D. Md. 1991). Other circuits have similarly held. See, e.g., Cecile Indus., Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986) (stating that "[t]he failure to follow a federal regulation may be negligence per se if, under state law criteria, it may be considered the kind of . . . regulation violation of which is negligence per se") (quotation omitted); Art Metal-U.S.A. v. United States, 753 F.2d 1151, 1158-59 (D.C. Cir. 1985) (stating that, "depending on the jurisdiction and the law violated," a violation of a federal regulation may constitute negligence per se under state law and thereby subject the Federal Government to liability under the FTCA); Gill v. United States, 429 F.2d 1072, 1075 (5th Cir. 1970) (stating that, "[w]hile principles of [state] law control, federal regulations may impose duties and standards of conduct upon the actors").

8

specific Government officers a duty to guard against that harm (exporters must present certificates of title to Customs officials), the regulation is intended to protect an identifiable class of persons (lawful owners of vehicles that are in the possession of third parties), the plaintiffs are within that protected class (Appellees held the certificates of title), public officials had reason to know of the harm that could be caused if they failed to fulfill their duty (Customs officials should have known of the losses Appellees could sustain if they did not demand certificates of title), and the officers had been given sufficient authority to carry out the given duty (Customs officials had the power to block exportation pending submission of the certificates). The district court concluded that "[t]he violation by Defendant of its own Regulation only serves to establish Defendant's actions in permitting the vehicles to be exported without certificates of title as negligence per se."

We believe that the district court erred. South Carolina courts consistently have been reluctant to find special duties statutorily imposed. In Summers, the Court of Appeals held that a state statute requiring officers who issue building permits to secure evidence that the builders and renovators of residences are licensed did not create a special, actionable duty to protect homeowners. 381 S.E.2d at 495-96. The court reasoned that the statute was intended simply to protect the general public "by insuring that only licensed builders perform residential building," and that the duty to secure particular documentation did not impose on government officials a duty to guard against poor workmanship. Id. at 496. Similar reluctance is evident in other cases as well. See, e.g., Brady Development Co. v. Town of Hilton Head Island, 439 S.E.2d 266, 268 (S.C. 1993) (holding that the town's Development Standards Ordinance was intended to protect the public from overdevelopment, not to protect homeowners from deprivation of water and other services); Bellamy v. Brown , 408 S.E.2d 219, 220-21 (S.C. 1991) (holding that statutorily prescribed exceptions to the disclosure requirements of the state's Freedom of Information Act did not establish a duty to maintain confidentiality); Jensen v. South Carolina Dep't of Social Services, 377 S.E.2d 102, 105-07 (S.C. Ct. App. 1988) (holding that the state's Child Protection Act, which required state and local officials to carry out various training, monitoring, reporting, and investigative responsibilities, did impose on local officials to whom instances of alleged child abuse had been reported a

9

special duty to investigate and intervene, but did not impose on state officials a special duty to protect particular children), aff'd, 403 S.E.2d 615 (S.C. 1991); Rayfield v. South Carolina Dep't of Corrections, 374 S.E.2d 910, 916-17 (S.C. Ct. App. 1988) (holding that a state statute requiring prison and parole officials to keep records of prisoners' habits and deportment and to prepare adequate reports concerning parole candidates did not create a special duty to protect particular members of the public against crimes committed by released prisoners), cert. denied, 379 S.E.2d 133 (S.C. 1989).

As in Summers, Jensen, and Rayfield, there is clearly a link in the case at bar between the documentation requirements and the harm eventually suffered: just as requiring a builder's license makes shoddy construction of residences less likely, just as reporting and monitoring requirements decrease the likelihood that children will be abused, and just as documenting and reporting prisoners' habits and dispositions decreases the likelihood that dangerous prisoners will be released, requiring certificates of title decreases the likelihood that cars will be removed from the United States without the consent of their owners. Yet, as in Jensen, "[n]o language in the [regulation] charges the specific officers with a duty to prevent such crimes." See 374 S.E.2d at 917. Indeed, the evident purpose of the regulation is not to impose on Customs officials a duty to protect Appellees and certain other identifiable parties from non-payment of debts,[3] but is instead to deter exportation of stolen autos by establishing procedures that must be followed when exporting used cars and by imposing varying levels of liability on importers and exporters that do not follow those procedures.[4]

We therefore conclude that the district court erred when it held that the federal regulation imposed on Customs agents a special duty, vio-

_____

[3] The language of the regulation is in fact framed to impose a duty on exporters, not Customs officials: rather than stating that Customs agents must secure certificates of title, the regulation requires exporters to present such certificates.

[4] For example, 19 C.F.R. § 192.3 imposes a $500 penalty on exporters who fail to comply with the requirements of § 192.2 and a $10,000 penalty on importers and exporters who knowingly attempt to import or export stolen vehicles or vehicles whose identification numbers have been removed or altered.

10

lation of which could subject the Government to liability for negligence under South Carolina law.

2. <u>Violation of a "Good Samaritan" Duty</u>

Appellees contend that, even if the federal regulation did not create a special duty to protect them from the harm that they suffered, the Government is nevertheless liable for negligence under South Carolina law. As the Government points out, South Carolina courts have adopted the "Good Samaritan" provision of the Second Restatement of Torts, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if . . . the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1993); <u>see Sherer v. James</u>, 351 S.E.2d 148, 150 n.3 (S.C. 1986). Appellees contend that the Government undertook to render services to them by enacting a regulation requiring presentation of certificates of title; that Customs agents failed to enforce that regulation with reasonable care; and that Appellees were harmed due to their reliance upon Customs agents to use such care.

We find Appellees' argument unpersuasive. First, the Customs regulations do not represent an effort specifically to "render services" to Appellees; instead, the regulations and authorizing legislation[5] were intended to deter the removal of stolen autos from the United States. <u>See</u> S. Rep. No. 98-308, 98th Cong., 2d Sess. 3-4, <u>reprinted in</u> 1984 U.S.C.C.A.N. 4910, 4912-13 (stating that the legislation was intended "to prevent the exportation of certain stolen vehicles" by imposing civil penalties on exporters and importers that violate the applicable statutes and regulations). Second, while there is evidence in the record

_____

[5] 19 C.F.R. § 192.2(b) was enacted pursuant to 19 U.S.C. §§ 1624, 1627a (1988 & Supp. 1995).

11

suggesting that Appellees' employees believed that the cars could not be exported so long as they held the certificates of title, there is no evidence that demonstrates that they genuinely relied upon Customs officials to enforce the regulation: nothing in the record makes clear that Appellees would not have agreed to follow the industry practice of using sight drafts--particularly with Preowned, a company that had been a customer for more than three years--had the Customs regulations not required presentation of certificates of title. We reject Appellees' argument accordingly.

## B. BREACH OF A FEDERAL DUTY THAT IS ANALOGOUS TO A DUTY RECOGNIZED BY STATE LAW

Regardless of whether South Carolina law would impose tort liability for violation of 19 C.F.R. § 192.2(b), Goldstar describes a second means by which the FTCA might permit Appellees' negligence action: the action would be permitted if "the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar, 967 F.2d at 969; see also Rayonier, 352 U.S. at 319 (stating that a court must determine "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred") (emphasis added).

The Government contended that "there is no authority holding a private party liable under South Carolina law for anything remotely resembling the alleged conduct at issue: permitting exportation on the basis of improper documents." Appellant's Brief at 12. Conceding that perhaps such a close analogy need not be found, the Government further argued that "there is no duty under South Carolina [law] to protect persons from the criminal actions of third parties, such as absconding with stolen goods." Appellant's Brief at 12.

Neither the district court nor Appellees attempted to identify appropriate analogies. Having reviewed the matter, we conclude that South Carolina law would not impose liability for breach of a duty that is sufficiently analogous to the duty purportedly imposed on Customs officials by 19 C.F.R. § 192.2(b) to render the Government liable to Appellees for the Customs agents' actions.

12

We therefore hold that the district court erred when it denied the Government's motion for summary judgment on the issue of negligence, and vacate the judgment entered against the Government accordingly.

III.

Appellees believe that the district court erred when it granted the Government's motion for summary judgment on Appellees' conversion claim. Rather than argue on appeal that the Government committed the tort of conversion, however, Appellees contend that Preowned is the party that committed the acts constituting conversion, but that the Government should be held liable in tort for aiding and abetting that conversion.[6]

In support of their contention that a party may be held liable for aiding and abetting a conversion, Appellees cite cases from the Second Circuit, Maine, Nebraska, and Washington. See Aeroglide Corp. v. Zeh, 301 F.2d 420, 422 (2d Cir.) (applying New York law), cert. denied, 371 U.S. 822 (1962); Lewiston Trust Co. v. Deveno, 74 A.2d 457, 458-59 (Me. 1950); State Securities Co. v. Svoboda, 110 N.W.2d 109, 112 (Neb. 1961); Davin v. Dowling, 262 P. 123, 124 (Wash. 1927). One commentary states, however, that "there are some cases in which persons who aid and abet others in committing a conversion are not regarded as liable therefor." See 18 Am. Jur. 2d Conversion § 70 (1985). Appellees do not cite, and we are unable to locate, any reported decision of a South Carolina court that suggests that South Carolina recognizes the tort of aiding and abetting a conversion.

The FTCA requires Appellees to show that "the United States, if a private person, would be liable to [Appellees] in accordance with

_____

[6] The Government contends that Appellees did not advance an aiding-and-abetting argument in their complaint, and that Appellees raise that argument for the first time in the instant appeal. Appellant's Reply Brief at 7. The Government is incorrect. In paragraph sixteen of the First Cause of Action described in their September 11, 1992, complaint, Appellees stated: "As a direct and proximate result of the conversion which Defendant aided and abetted and in which Defendant participated, Plaintiff . . . has been damaged . . . ."

the law of the place where the act or omission occurred." <u>See</u> 28 U.S.C. § 1346(b); <u>see also Block v. Neal</u>, 460 U.S. 289, 294 & n.3 (1983) (noting that the court of appeals had failed to find that state law (a) recognized the doctrine under which the district court had found the Government liable for negligence and (b) would apply that doctrine "to a private person responsible for similar negligence," and suggesting that the Government could have invoked that failure as grounds for appeal). We are unable to say, with the requisite degree of certainty, that South Carolina law permits an action for aiding and abetting a conversion, or that, if such an action were permitted, the Government would be found liable for its agents' conduct under whatever principles the South Carolina courts would recognize as controlling in such actions. We therefore refuse to disturb the district court's ruling on Appellees' conversion claim.

IV.

For the foregoing reasons, we hold that the district court erred when it denied the United States's motion for summary judgment on the issue of negligence, but did not err when it granted the Government's motion for summary judgment on Appellees' conversion claim. The decision of the district court is accordingly

<u>REVERSED IN PART AND AFFIRMED IN PART</u>.

14