15422

POWELL v. A. K. BROWN MOTOR CO.

(20 S. E. (2d), 636)

June 1941.

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, counsel for appellant,

*Mr. C. T. McDonald,* of Florence, counsel for respondent,

June 4, 1942.

The opinion of the Court was delivered by CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE:

On September 15, 1938, the respondent Liston Powell, took his automobile to the place of business of the A. K. Brown Motor Company, in the Town of Lake City, to have repairs made to a tire. The appellant, a corporation, was an automobile dealer, and operated a shop where repairs to automobiles were made.

An hour later, at 12:30 o'clock the plaintiff returned to the shop to get his car, and found that it had been removed.

About thirty minutes passed, according to the defendant's witnesses, when Willie James McGee, a colored employee of the appellant, drove up in the car. It was damaged as a result of being overheated. Upon inspection of the speedometer the plaintiff found that it had been driven about sixty miles.

McGee had been in the employ of the defendant for two years. He was not a mechanic. The defendant said that his duties were mainly to wash cars, though he could repair tires.

The defendant at once agreed to repair the automobile without cost to the plaintiff, and started upon the work the same afternoon. Next morning the parties came to a disagreement as to what should be done to restore the car to a good condition. The defendant contended that the work it was doing was just what was needed; the plaintiff claimed that the repairs were not being properly made, that Mr. Brown had promised to put in pistons, new valves and rings, and new spark plugs; and that in fact a new motor was required. As a result of this difference, plaintiff took his car and carried it away. The defendant continued to keep the colored man in its employment for a year.

Though the complaint also charged negligence, the plaintiff's case is based primarily upon conversion, and was tried on that theory. The chief defense of the appellant was that its servant, without any authority and without its knowledge, acquiescence, or consent, took the automobile and drove it in furtherance of his own personal desires. The cause was tried before his Honor, Judge William H. Grimball, and a jury, at the Court of Common Pleas for Florence County. The defendant moved for a nonsuit and for the direction of a verdict. The trial Judge directed a verdict as to punitive damages, and in other respects the motions were refused. The jury found a verdict for the plaintiff for $150.-00. A motion for a new trial was overruled.

In the appeal the principal contention of the defendant is that there was no conversion by it, for the reason that the only reasonable inference to be drawn from the testimony

was that the colored employee, in taking the car, was at the time not acting within the scope of his employment; and that his Honor should have so held upon the motions to take the case from the jury; and should also have granted a new trial.

What constitutes conversion has been very clearly ■ stated in a number of the decisions of this Court.

In *Neel v. Clark,* 193 S. C., 412, 8 S. E. (2d), 740 742, it is said that conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights."

It is stated in *Young v. Corbitt Motor Truck Co.,* 148 S. C., 511, 146 S. E., 534, 542, that "conversion may arise either by a wrongful taking of the chattel or by some other illegal assumption of ownership by illegally using or misusing it, or by wrongful detention."

The case of *Sherer-Gillett Co. v. Moore-Barnes Co.,* 114 S. C., 387, 103 S. E., 766, defines conversion as "the unlawful exercise of dominion over the property of another."

It is declared in *Hutchinson v. Bobo,* 17 S. C. L., 546, 1 Bailey 546, that "any use, or disposition, of a chattel, without the consent of the owner, and inconsistent with his rights, is a conversion."

And in *Harris v. Saunders,* 21 S. C. Eq., 370, note, 2 Strob. Eq., 370, note, the Court said that "a conversion seems to consist in any tortious act, by which the defendant deprives the plaintiff of his goods, either wholly or but for a time."

"An unauthorized use of the property by the bailee constitutes a conversion." 8 C. J. S., Bailments, § 31, p. 284.

Without doubt, if it is bound by the acts of McGee, the defendant is liable for conversion. 39 C. J., 1299; 3 C. J. S., Agency, § 255, p. 188; 8 C. J. S., Bailments, § 27, p. 274.

In considering the question it is important to bear ■ in mind the relationship which existed between the plaintiff and the defendant, which was that of

bailor and bailee. In such case there was an implied contractual obligation that the automobile which was placed with the defendant for repairs should not be used in an unauthorized manner.

In cases brought by third persons directly against the owners of automobiles for damages resulting from the negligence of the driver, the law is well settled, on the one hand, that a master is responsible for the torts of his servant, done within the scope of his employment. *McFadden v. Anderson Co.,* 121 S. C., 407, 114 S. E., 402.

In such cases it is equally clear, on the other hand, that "when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension." *Holder v. Haynes,* 193 S. C., 176, 7 S. E. (2d), 833, 837.

However, in cases of bailments, it is said at 8 C. J. S., Bailments, § 27, p. 274: "Although there is authority to the contrary, generally, where the bailee gives his servant possession of the property and the property is damaged or lost while unauthorizedly used by the servant, the possession of the servant is the possession of the master with respect to the latter's contractual obligations to the bailor, and the bailee is liable for such damage or loss since he cannot release himself from contractual liability by his own conduct or that of his servant. The possession of the servant, however, must be with the knowledge and consent of the bailee, otherwise he is not liable."

This rule is followed in a great many states, though in a few jurisdictions a different view is taken, as stated in the case of *Firemen's Funds Insurance Co. v. Schreiber,* 150 Wis., 42, 135 N. W., 507, 45 L. R. A. (N. S.), 314, Ann. Cas., 1913, E., 823. The majority rule seems to be in accord with the text of *Corpus Juris Secundum,* as shown by the annotated case of *National Liberty Insurance Co. v. Sturte-*

*vant-Jones Co.,* 116 Ohio St. 299, 156 N. E., 446, 448, 52 A. L. R., 705. In that case it was said:

"* * * When did the possession pass from the master? Can it be said that it rests in the breast of the servant to release his master from contractual liability to a stranger to the servant by himself becoming unfaithful to his master? If so, the contract of bailment affords the bailor scant protection. If the master be not responsible for the act of his servant, the bailor, for his own security, before entering into such contract, must not only investigate and determine the trustworthiness and the financial responsibility of the bailee, but must do the same with reference to each of his servants. * * *

"The degree of responsibility which the master in the instant case placed upon his servant, the extent to which he intrusted him to act in his place and stead, were of his own measuring and determination. We are not in accord with any principle which would permit him to relieve himself of the responsibility thus contractually assumed for the reason that he made an unwise selection of the servant, or was the victim of his own misplaced confidence."

The present case is not one brought against the owner of the automobile for damages caused by the owners' driver. In such a case it would be a highly important question to determine whether or not the servant had stepped aside from the master's work to accomplish some purpose of his own. This case being one of bailor against bailee, the Brown Motor Company owed plaintiff the duty, arising from the contract of bailment, to repair the tire; it also was obligated not to use the car for other and different purposes. The bailee's servant used the car in a manner unauthorized by the terms on the bailment. Even though he may also have deviated from the master's designated course, the real question is, did the servant obtain possession of the automobile in the first instance without the knowledge and consent of the defendant, as appellant claims in its answer, or is there any evidence from which a reasonable inference may be

drawn that the car was at the beginning in McGee's possession with the knowledge and consent of the master for the purpose of having the repairs made to the tire? ·

When plaintiff first took the automobile to the repair shop, he left it with Mr. Nelson, the shop foreman. Plaintiff did not then see McGee at all, and had no dealings with him. While the defendant contends that the servant took the automobile, without permission, from the lot back of the shop, the evidence shows that when plaintiff called at the end of the first hour to get his automobile he inquired of Mr. Nelson for it, and the foreman told him that the colored man had probably taken the car to Ward's place to change the tire as he often did when they were busy. It is a reasonable inference that Mr. Nelson knew that McGee had the car, and that it was customary for him to be intrusted with cars to take to Ward's place when necessary. When the car was turned over to him he was on duty at his master's place of business, during working hours.

This was some evidence, in our opinion, that the servant had the car in his possession with the knowledge and consent of the master.

In addition, as we have seen, Mr. A. K. Brown, the head of the defendant company, was present when McGee returned with the car, and he immediately agreed to repair it at the defendant's expense. The defendant contends that this was done without admitting liability. What Mr. Brown really testified, however, was: "Well, I went out and saw Mr. Powell and asked him what would it take to satisfy him. Mr. Powell said, 'Fix my car back like it was and I will be satisfied.' * * * My understanding, we had an agreement that I was to fix the car back just like it was before the negro drove it off." It is true that the plaintiff while on the witness stand testified as follows:

"Q. Didn't Mr Brown tell you that he would fix your car for you; he didn't think there was any responsibility on him, but that he would fix the car if you looked at it that way?

"A. He told me afterwards."

This conversation apparently took place later, probably after the disagreement about the repairs had arisen.

We think that this was some evidence in the nature of an admission by the defendant that it knew of and had consented to the possession of the automobile by its servant.

This case differs from the cases of *Holder v. Haynes,* above, and *Knight v. Laurens Motor Co.,* 108 S. C., 179, 93 S. E., 869; L. R. A., 1918-B, 151, in that neither of them involved bailments. The facts are different, too. In the *Haynes case* the truck was used by the employee while off duty on a Sunday, without the owner's knowledge, permission or consent, and in violation of definite instructions not to use it on Sundays. He was using it for his pleasure and for purposes wholly without the scope of his master's business. In the *Knight case* the employee was off duty when at night he took his master's car, and he and a friend drove it out in the country with some young ladies.

In the present case, McGee was on duty, and the bailee of the automobile intrusted it to him in the performance of the work for which it had been bailed.

We think that there was sufficient evidence to carry the case to the jury, and that his Honor was correct in sending it to them, and in refusing the motion for a new trial.

The only other exception of the appellant relates to the Judge's charge to the jury, and it is there contended that the defendant was prejudiced by the fact that the Court charged that a repairman is required to use due care to see that the property is not injured. Appellant contends that the jury was confused and misled.

It is true that negligence is not an essential element of conversion, but we do not think that the appellant could have been prejudiced. His Honor fully charged the jury the law as to conversion, as to master and servant, as to damages, and as to the duty of plaintiff to minimize his damages. He instructed them that the plaintiff must prove the fact that the automobile was damaged, and second, that

the damages were caused by a conversion on the part of the defendant motor company.

At the conclusion of the charge the Court asked if there was anything further to be stated, and the defendant's counsel responded that there was not. The appellant did not call to the attention of the Court its claim that there was a misstatement of the issues, or that the instruction was irrelevant. *Whitaker v. Sherbrook Co.,* 189 S. C., 243, 246, 200 S. E., 848; *De Lorme v. Strauss,* 127 S. C., 459, 121 S. E., 370.

The charge must be considered as a whole, and so regarded, we do not think that the jury could have been confused or misled, or that the appellant could have been prejudiced.

The plaintiff Powell filed exceptions to the order settling the case for appeal, on the ground that the pleadings were not ordered printed in full. We think that the condensed statement of the pleadings in the transcript of record is sufficiently full, except that there should have been included in the statement, as appears in the second paragraph of the complaint, that the plaintiff alleged that the defendant company agreed to repair the tire. To this extent the plaintiff's exceptions are sustained, and in all other respects they are overruled.

It is true that the case was tried on the theory of a conversion, and not on contract; yet, underlying the rights of the parties is the fact that they were bailor and bailee, and therefore subject to the duties surrounding such a relationship.

All of the exceptions of the appellant are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Fishburne and Stukes, and Circuit Judge Philip H. Stoll, Acting Associate Justice, concur.