THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD 
 NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Victor L. Blue and Gail V. Blue,       
Respondents,
 
 
 

v.

 
 
 
Larry Harrelson and Nancy Harrelson d/b/a Angle Construction Company,       
Appellants.
 
 
 

Appeal From Florence County
B. Hicks Harwell, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-656
Submitted November 1, 2004  Filed December 
 22, 2004

AFFIRMED

 
 
 
Kenneth E. Merriman, of Florence, for Appellants.
Daryl James Corbin, of Florence, for Respondents.
 
 
 

PER CURIAM:  In this action to recover damages 
 arising from a construction contract, Larry Harrelson and Nancy Harrelson, d/b/a 
 Angle Construction Company (the Harrelsons), appeal the trial judges entry 
 of judgment in favor of Victor L. Blue and Gail Blue (the Blues).  We affirm. 
 [1] 
FACTS
The Blues entered into a construction 
 contract with the Harrelsons on April 6, 1999.  The Harrelsons agreed to complete 
 construction of the Blues home no later than 265 days from the date of the 
 contract for a purchase price of $340,000.  In addition, the parties negotiated 
 a late-fee provision of $120 per day after December 28, 1999, if the home was 
 not complete.  The Harrelsons never completed the home.  During this time period, 
 the Blues were also subjected to litigation with the Shaw Lumber Company and 
 forced to refinance their home due to the Harrelsons failure to satisfy an 
 account that was designated for the Blues construction project.  
On November 22, 2000, the Blues filed this action, alleging breach of contract 
 with fraudulent intent, negligence, breach of fiduciary duty, and civil conversion.  
 Underlying these causes of action, the Blues primarily asserted the Harrelsons 
 breached the contract by:  (1) failing to complete the construction within the 
 designated 265-day time period; (2) failing to construct the home in a workmanlike 
 manner; and (3) failing to pay the material suppliers and subcontractors involved 
 in the project.  The Blues sought relief of $150,000 in actual damages and $150,000 
 in punitive damages. 
Because the Harrelsons failed to answer or respond to the pleadings, the trial 
 judge entered an order of default on February 14, 2001.  This order provided 
 that all allegations contained within the Plaintiffs pleadings are deemed 
 true.  The judge denied the Harrelsons motion to set aside the entry of default.  
 The judge then held a hearing solely on the amount of damages.
The judge found the 
 Blues were entitled to an award of actual damages for completion costs of construction 
 in a proper manner, reputational harms and damages, and emotional distress.  
 The judge also concluded the Blues were entitled to additional damages under 
 its breach of contract theory given the [Harrelsons] violation of the late-fee 
 provision for some of the period of time between December 28, 1999, and May 
 1, 2001.  The judge entered judgment in the amount of $50,000 for breach of 
 contract, violation of the late-fee penalty provision, negligence, breach of 
 fiduciary duties, and civil conversion.  The judge denied the Blues 
 request for punitive damages.
Subsequently, the Harrelsons filed 
 a motion pursuant to Rule 59(e), SCRCP.  The judge denied the motion 
 and affirmed his previous ruling, explaining:

In considering damages, the Court based its consideration 
 on the causes of action contained in the Plaintiffs complaint:  breach of contract, 
 breach of fiduciary duty, negligence, conversion and emotional and reputational 
 harm.  The Courts consideration of damages was also based on the following:  
 delay in not complying with the construction completion date which was provided 
 for in the contract, injury to the Plaintiffs credit standing, including refinancing 
 with increased interest on the loan, assorted tools, including but not limited 
 to, saws, hammers and paint brushes that were charged to the Plaintiffs but 
 were never given to them, and those items charged to the building site that 
 were not found in the construction.

The Harrelsons appeal.
STANDARD OF REVIEW
This case presents 
 an action at law. See Roberts v. Gaskins, 327 S.C. 478, 483, 486 
 S.E.2d 771, 773 (Ct. App. 1997) (stating an action for a breach of contract 
 seeking money damages is an action at law); see also Corley v. Ott, 
 326 S.C. 89, 92 n.1, 485 S.E.2d 97, 99 n.1 (1997) (recognizing an action for 
 breach of fiduciary duty is an action at law); Advance Intl, Inc. v. North 
 Carolina Natl Bank of South Carolina, 316 S.C. 266, 271, 449 S.E.2d 580, 
 583 (Ct. App. 1994), affd in part and vacated in part, 320 S.C. 532, 
 466 S.E.2d 367 (1996) (action alleging, inter alia, fraud and negligence and 
 seeking damages is one at law); Blackwell v. Blackwell, 289 S.C. 470, 
 471, 346 S.E.2d 731, 732 (Ct. App. 1986)(An action for damages for conversion 
 is an action at law.).  In an action at law, tried without a jury, our scope 
 of review extends merely to the correction of errors of law.  Crary v. Djebelli, 
 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998).  Thus, the trial judges factual 
 findings will not be disturbed on appeal unless a review of the record discloses 
 that there is no evidence which reasonably supports the judges findings. Id.; 
 Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 
 773, 775 (1976).
DISCUSSION
I.
The Harrelsons argue the trial judge erred 
 in failing to dismiss the Blues causes of action for civil conversion, negligence, 
 and breach of fiduciary duty.  As to each cause of action, the Harrelsons contend 
 the Blues failed to prove damages.  In conjunction with their civil conversion 
 argument, the Harrelsons claim there is no evidence to support the judges finding 
 that the Blues were damaged by the Harrelsons charging tools and materials to 
 an account with the Shaw Lumber Company, which was designated for the Blues 
 construction project. 
To the extent the Harrelsons challenge 
 their liability, we find they are precluded from raising these issues due to 
 the entry of default.  Because the Harrelsons were found in default, 
 they are deemed to have admitted the truth of the Blues allegations and conceded 
 liability.  See Roche v. Young Bros., Inc., of Florence, 332 S.C. 
 75, 81, 504 S.E.2d 311, 314 (1998) (It is well settled that by suffering a 
 default, the defaulting party is deemed to have admitted the truth of the plaintiffs 
 allegations and to have conceded liability.); Howard v. Holiday Inns, Inc., 
 271 S.C. 238, 242, 246 S.E.2d 880, 882 (1978) (By defaulting, a defendant forfeits 
 his right to answer or otherwise plead to the complaint.  In essence, the defaulting 
 defendant has conceded liability.  However, a defaulting defendant does not 
 concede the amount of liability.) (citation omitted).
Despite the entry of default, the Harrelsons may 
 raise, as they have done, issues regarding the sufficiency of the Blues pleadings 
 and their entitlement to damages under each cause of action.  See Masters 
 v. Rodgers Dev. Group, S.C., 283 S.C. 251, 254, 321 S.E.2d 194, 196 (Ct. 
 App. 1984) (holding defendant found in default was not precluded from challenging 
 the sufficiency of the plaintiffs complaint as a basis for judgment); see 
 also Mut. Sav. & Loan Assn v. McKenzie, 274 S.C. 630, 632, 266 
 S.E.2d 423, 424 (1980) (A party seeking a default judgment is entitled to only 
 such relief as is framed by his pleading . . . It follows that if a complaint 
 fails to state a cause of action, the rendering of a default judgment thereon 
 is without authority of law and therefore reversible error.).  As will be discussed, 
 we find the Blues properly pled the alleged causes of action and there is evidence 
 to support the trial judges award of damages under each theory.  
A.  
Conversion has been defined as 
 the unauthorized assumption and exercise of the right of ownership over goods 
 or personal chattels belonging to another, to the alteration of the condition 
 or the exclusion of the owners rights.  Powell v. A.K. Brown Motor Co., 
 200 S.C. 75, 78, 20 S.E.2d 636, 637 (1942).  Furthermore, [c]onversion may 
 arise by some illegal use or misuse, or by illegal detention of anothers personal 
 property. Regions Bank v. Schmauch, 354 S.C. 648, 667, 582 S.E.2d 432, 
 442 (Ct. App. 2003).
A review of the Blues complaint 
 reveals that they sufficiently pled a cause of action for civil conversion.  
 Specifically, the Blues alleged they entrusted funds to the Harrelsons which 
 were supposed to have been used solely for satisfaction of labor and materials 
 costs involving construction of their home. They further asserted the Harrelsons 
 intentionally took the Blues money and used it for their own personal benefit 
 to the Blues detriment.  Finally, the Blues alleged the Harrelsons converted 
 approximately $50,000 of the Blues money and have failed to return it to them.  

Not only did the Blues properly plead 
 a cause of action for civil conversion, there is also evidence in the record 
 to support their entitlement to damages under this cause of action.  Mr. Blue 
 testified concerning their damages, which were outlined in a summary that was 
 admitted into evidence.  He testified the Harrelsons misused construction 
 funds to purchase tools and materials that were not used in the construction 
 of the home.  Thomas Robertson, a construction inspector, reviewed the invoices 
 from the Shaw Lumber Company and confirmed that items were designated for the 
 Blues construction projection but were not in fact used for the home.  Robertson 
 concluded that missing construction materials and tools worth $4,632.96 were 
 inappropriately charged to the Blues account.  Mrs. Harrelson admitted the 
 tools, valued at $1,513.22, were never given to the Blues.  She also testified 
 that she understood that by charging these items to the Shaw Lumber account 
 and specifying that they were to be used for the Blues construction, the Blues 
 would be subject to litigation if the invoices were not paid.  She acknowledged 
 the Blues were sued by Shaw Lumber Company and required to satisfy the debt.  
 Mr. Blue testified they paid Shaw Lumber Company $55,000 in order to release 
 the lien.
B.
To state a cause of action for negligence, the 
 plaintiff must allege facts that demonstrate:  (1) a duty of care owed by the 
 defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; 
 (3) resulting damages to the plaintiff; and (4) the damages proximately resulted 
 from the breach of that duty.  Thomasko v. Poole, 349 S.C. 7, 11, 561 
 S.E.2d 597, 599 (2002).  In their complaint, the Blues alleged the Harrelsons 
 owed the Blues a duty to construct the house in a workmanlike manner and failed 
 to do so.  As part of this cause of action, the Blues incorporated other provisions 
 of their complaint.  In paragraphs six and seven of the complaint, the Blues 
 outlined the construction deficiencies and alleged the failure of the Harrelsons 
 to correct the deficiencies despite being ordered to do so by the South Carolina 
 Residential Builders Commission.  Furthermore, the Blues claimed that [d]ue 
 to the Harrelsons negligence, the Blues have incurred and will continue to 
 suffer from severe financial, emotional, and repuational harms and damages.  
 Therefore, we find the Blues sufficiently stated a cause of action for negligence.
There is also evidence supporting the Blues entitlement 
 to damages pursuant to their cause of action for negligence.  During the presentation 
 of their case, the Blues offered the testimony of Robertson and John Kendall, 
 an investigator/inspector with the South Carolina Residential Home Builders 
 Commission (the Commission).  Kendall testified concerning the deficiencies 
 in the Harrelsons workmanship.  Based on his inspection, Kendall compiled two 
 reports, which listed items that needed to be corrected to the Blues home because 
 the work that was performed violated construction standards and building codes.  
 The Commission also issued an order, pursuant to its review of the Blues complaint, 
 in which it prohibited the renewal of Mr. Harrelsons building license until 
 the deficient work was corrected.  Robertson also testified regarding 
 construction items that were either incomplete or not satisfactorily completed.  
 As a result of these alleged deficiencies, Robertson testified about the costs 
 incurred by the Blues to correct the construction problems, which included warped 
 hardwood floors and roof flashing problems.  Furthermore, in explaining 
 the damage summary exhibit, Mr. Blue testified about the damages that he and 
 his wife incurred due to the defective construction.    
C.
In terms of the Blues cause of action for breach 
 of fiduciary duty, it is well-settled equitable rule that anyone acting in 
 a fiduciary relationship shall not be permitted to make use of that relationship 
 to benefit his own personal interests. Island Car Wash, Inc. v. Norris, 
 III, 292 S.C. 595, 599, 358 S.E.2d 150, 152 (Ct. App. 1987); see 
 Hendricks v. Clemson Univ., 353 S.C. 449, 458, 578 S.E.2d 711, 715 (2003) 
 (Historically, this Court has reserved imposition of fiduciary duties to legal 
 or business settings, often in which one person entrusts money to another.).  
 In support of this cause of action, the Blues properly alleged that they entrusted 
 the Harrelsons with their construction funds; and the parties had a special 
 fiduciary relationship during the construction project.  Accordingly, the Harrelsons 
 had a fiduciary relationship with the Blues and were required to use the construction 
 funds solely to satisfy costs involving the Blues project.  The Blues further 
 asserted that the Harrelsons owed the Blues duties of honesty, loyalty, and 
 fair-dealing, and that they breached their fiduciary duty by taking their 
 construction funds and using the money for purposes other than paying the Blues 
 construction costs.  The complaint further stated, [a]s a proximate result 
 and consequence of the Harrelsons breach of fiduciary duties, the Blues have 
 incurred and will continue to suffer from substantial additional construction 
 and repair costs, financing and interest expenses, litigation costs, and emotional 
 and reputational harms and damages. 
As to damages, there is evidence in the record 
 to support the trial judges conclusion that the Blues were entitled to recover 
 under their cause of action for breach of fiduciary duty.  As previously discussed, 
 the Blues, through their own testimony and that of Robertson, established that 
 the Harrelsons inappropriately charged materials and tools at the Shaw Lumber 
 Company and designated them for the Blues construction project.  Mrs. Harrelson 
 admitted that the tools were never given to the Blues.  Although the Harrelsons 
 were aware of the financial repercussions to the Blues, they did not satisfy 
 the outstanding invoices.  Due to the Harrelsons actions, the Blues had to 
 pay Shaw Lumber $55,000 to obtain a release of their home and avoid foreclosure.    

II.
The Harrelsons assert the trial court 
 erred in assessing damages based on the penalty provision of the construction 
 contract.  They contend the provision is unenforceable because it is not based 
 on a consideration of actual damages and it is excessive. 
The Harrelsons are correct that where 
 a contract provision is not based upon contemplated actual damages, but is intended 
 to provide punishment for breach of contract, it is a penalty.  See Moser 
 v. Gosnell, 334 S.C. 425, 431-32, 513 S.E.2d 123, 126 (Ct. App. 1999) (The 
 test for determining whether a stipulation constitutes a penalty is whether 
 the sum stipulated is so large that it is plainly disproportionate to any probable 
 damage resulting from breach of the contract. (quoting Tate v. LeMaster, 
 231 S.C. 429, 442, 99 S.E.2d 39, 46 (1957))).  However, because the Harrelsons 
 failed to answer or respond to the Blues complaint, they have waived any challenge 
 to this provision. See D & D Leasing Co. of South Carolina, Inc. 
 v. Lipson, 305 S.C. 540, 542, 409 S.E.2d 794, 796 (Ct. App. 1991) (Unenforceability 
 based on a penalty theory is an affirmative defense that must have been pled.).        

III.
The Harrelsons argue the trial 
 judges orders were insufficient under Rule 52(A), SCRCP, to determine the basis 
 for the award of actual damages in the amount of $50,000. 
Rule 52(a) of the South Carolina Rules of Civil Procedure 
 provides, [i]n all actions tried upon the facts without a jury or with an advisory 
 jury, the court shall find the facts specially and state separately its conclusions 
 of law thereon.  Our supreme court has held that:

this requirement to be directory and that noncompliance 
 would not form the basis for invalidating a judgment.  Rather, where a trial 
 court substantially complies with Rule 52(a) and adequately states the basis 
 for the result it reaches, the appellate court should not vacate the trial courts 
 judgment for lack of an explicit or specific factual finding.

Noisette v. Ismail, 304 S.C. 56, 58, 403 S.E.2d 
 122, 123-24 (1991)(citations omitted).   
Because we find the trial judges 
 order entering judgment and the order denying a new trial substantially complied 
 with the requirements of Rule 52(a), we decline to invalidate the judgment in 
 favor of the Blues.  In the initial order, the judge made eight specific findings 
 of fact and then found the Blues were entitled to actual damages under each 
 cause of action.  In the order denying the Harrelsons motion for a new trial, 
 the judge affirmed his previous ruling and explained the basis for his award 
 of damages.  See In re: Treatment and Care of Luckabaugh, 351 
 S.C. 122, 133, 568 S.E.2d 338, 343 (2002) (We do not require a lower court 
 to set out findings on all the myriad factual questions arising in a particular 
 case.  But the findings must be sufficient to allow this Court, sitting in its 
 appellate capacity, to ensure the law is faithfully executed below.) (citation 
 omitted).  Although the judge did not delineate the amount of damages for each 
 cause of action, we find this omission does not mandate an invalidation of the 
 judgment in favor of the Blues.  As will be discussed, there is evidence to 
 support the amount of damages awarded to the Blues.
IV.
Finally, the Harrelsons argue the trial judge erred 
 in awarding the Blues $50,000 in damages. 
The plaintiff has the burden of proving damages 
 for a breach of contract action.  Jackson v. Midlands Human Resources Ctr., 
 296 S.C. 526, 528, 374 S.E.2d 505, 506 (Ct. App. 1988).  Specifically, this 
 Court has stated:

In a default case, the plaintiff must prove by competent 
 evidence the amount of his damages, and such proof must be by a preponderance 
 of the evidence.  Although the defendant is in default as to liability, the 
 award of damages must be in keeping not only with the allegations of the complaint 
 and the prayer for relief, but also with the proof that has been submitted.  

Id. at 529, 374 S.E.2d at 506 (citation omitted).   

Initially, we note the Harrelsons assert the Blues 
 are only entitled to $4,297.98 in damages, which represents the amount needed 
 to complete the construction in excess of the original contract price of $340,000. [2]   This assertion, however, confines 
 the Blues damages solely to their breach of contract action.  Because the Blues 
 sought to recover under several other causes of action, as their attorney reiterated 
 during the hearing, their damages would not be limited to this amount. 
Turning to the testimony and evidence presented 
 by the Blues, Mr. Blue testified they suffered $173,990.57 in actual damages.  
 These damages were itemized on a summary sheet that was entered into evidence 
 during Mr. Blues testimony. [3] 
 

The contract required the Harrelsons to comply 
 with all building laws and applicable building codes of Dillon County and of 
 the State of South Carolina.  However, Kendall, who investigated the Blues 
 complaint against the Harrelsons for the Commission, concluded that construction 
 of the home violated the standard building practices, codes, regulations, and 
 standards.  Robertson, who the Blues hired as an expert to inspect the construction, 
 testified there were problems with several contract items, which included the 
 front porch, painting, fixtures, warped hardwood floors, and roof flashing.  
 As to the cost of correcting and completing these items, Mr. Blue testified 
 they paid $13,138.98.  He further stated the cost of completing construction 
 on the Blues home was estimated at $9,650 for work on the porches, shower units, 
 window screens, light wiring, as well as other items.
In addition, Mr. Blue testified concerning the 
 Harrelsons use of the construction account at Shaw Lumber Company to purchase 
 tools and materials not used in the Blues home.  Robertson, who had forty-two 
 years of experience in construction and held South Carolina General Contractors 
 and Residential Home Builders licenses, examined the Shaw Lumber invoices and 
 determined $4,632.96 in missing construction materials and tools was charged 
 to an account at Shaw Lumber, which was designated for the Blues construction 
 project.  Because the Harrelsons did not pay the Shaw Lumber invoices as agreed 
 upon by the parties in the contract, Shaw Lumber sued the Blues for the balance 
 of the account.  The Blues had to pay Shaw Lumber $55,000 to obtain a release 
 from this debt.  Mrs. Harrelson acknowledged this debt and the financial repercussions 
 could have been avoided had the Harrelsons satisfied the charges as stipulated 
 by the contract between the parties. 
Due to the Shaw Lumber Company debt and resulting 
 litigation, the Blues testified their credit rating was adversely affected.  
 Additionally, the Blues original mortgage holder, NBSC, began foreclosure.  
 The Blues were then forced to obtain financing at a higher interest rate from 
 another financial institution.  They paid an application fee of $300 and closing 
 costs of $3,912.40 to First Citizens Bank where the Blues eventually obtained 
 financing for a second mortgage.  Aside from the above-outlined tangible damages, 
 Mr. Blue also testified they suffered emotional damages in the amount of $50,000.  
 Mrs. Blue, a mental health counselor, testified regarding the specifics of the 
 emotional damages.  She claimed that as result of the financial problems she 
 was anxious and had migraine headaches for which she took medication.  She further 
 testified her husband became irritable, experienced headaches, and had trouble 
 sleeping.
Finally, the construction contract provided for 
 a late-fee of $120 per day if the Harrelsons failed to complete the Blues home 
 in the allotted 265-day time period.  Because the project was not completed 
 as agreed upon by the parties, Mr. Blue testified the Harrelsons accrued a late 
 fee of $58,680.00 for the 489 days between December 28, 1999 and May 1, 2001, 
 the day the Blues obtained financing to complete the project.  Based on the 
 foregoing, we find there is evidence in the record to support the trial judges 
 award of actual damages to the Blues in the amount of $50,000.
CONCLUSION
We find the Blues properly pled each cause 
 of action raised in their complaint and presented evidence in support of their 
 entitlement to damages.  We hold the trial judges order awarding damages to 
 the Blues was sufficient and there is evidence to support his award of damages 
 in the amount of $50,000.  Accordingly, the decision of the trial judge is
 AFFIRMED.  
 HUFF, KITTREDGE, and BEATTY, JJ., concur.

 
 
 [1]  Because oral argument would not aid the court in resolving the issues 
 on appeal, we decide this case without oral argument pursuant to Rule 215, 
 SCACR.

 
 [2]    The Harrelsons base this amount on the following 
 calculation:
 
 Paid by the Blues directly to the Harrelsons                   
 $ 266,500.00
 Paid by the Blues to Shaw Lumber Company                    
 55,000.00
 Construction cost paid directly by the Blues       
                  13,138.98
 Construction cost to complete the contract                           
 9,650.00
                                                                                             $  
 344,297.98
 

 
 [3]    The following is an abbreviated version of the 
 Blues damage summary:
 
 Construction Costs Paid by the Blues                            
 $   13,138.98
 Construction Completion Costs                         
                     
 9,650.00
 Items Missing Charged By Harrelsons to 
 Blues                   
 4,632.96
 Mortgage Refinancing
 Costs                                                
 22,893.63
 Liens, Attorneys Fees, and Litigation 
 Expenses                64,995.00
 Contract Damages (Late Penalty:  $120/day 
 x 489)           58,680.00
 Emotional/Reputational Damages                                       
 50,000.00
                                                                                  
             $ 173,990.57