647 S.E.2d 188

**Chandler B. PLYLER f/k/a Mary C. Burns, Appellant,**

**v.**

**Michael J. BURNS, Laura Burns, Selective Insurance Company of America, South Carolina Retirement Systems, Horry County Probate Court, BB & T Corporation, Ted H. Watts, individually and on behalf of The National Bank of South Carolina, Debbie Ann Dellavecchia, Individually and on behalf of John Doe Mortgage Company, Tracy Leavens, Colony Bank SouthEast–Broxton, The Conway National Bank, First Citizens Bank of South Carolina, SunTrust Banks, Inc., Allen Bailey and Bailey, Patterson, Caddell, Hart & Bailey, P.A., Defendants,**

**Of Whom Horry County Probate Court is Respondent.**

No. 26335.

Supreme Court of South Carolina.

Heard April 4, 2007.

Decided June 11, 2007.

642

Russell S. Stemke, of Isle of Palms, for Appellant.

Emma Ruth Brittain and Matthew R. Magee, both of Thompson & Henry, of Myrtle Beach, for Respondent.

Chief Justice TOAL:

This is an appeal from a grant of a motion to dismiss a cause of action brought by a beneficiary of a conservatorship against a county probate court. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

In December 1992, Appellant Chandler Plyler's ("Plyler") mother died as a result of complications from surgery. Plyler was fourteen years old at the time of her mother's death. Because Plyler was a minor, the Horry County Probate Court ("HCPC") established a conservatorship to protect Plyler's interests in the estate benefits she received as a result of her mother's death. HCPC appointed Michael Burns ("Burns"), Plyler's father, as conservator.

Burns initially filed documentation with HCPC estimating the value of the conservatorship estate to be eighty-five thousand dollars ($85,000.00). Burns obtained a bond in that amount and filed it with HCPC. Approximately two months later, Burns filed an initial inventory and appraisal with HCPC indicating the value of the estate to be $85,618.00 which was held in two certificates of deposit. After the first year of the conservatorship, Burns filed an annual accounting showing the value of the conservatorship to be $90,727.84. The second annual accounting reported a conservatorship value of $152,066.84. The third annual accounting reported a conservatorship value of $158,164.29.

After Plyler reached the age of majority, Burns filed a final accounting with HCPC indicating payments on behalf of Plyler

in the amount of $43,410.00 and a balance of $118,935.52. Burns indicated that the balance had been distributed to Plyler and provided a notarized receipt to HCPC. Burns filed a petition for discharge and HCPC granted the petition. This terminated the conservatorship.

In 2004, approximately seven years after the termination of the conservatorship, Plyler commenced an action against Burns, HCPC, and several other entities alleging several causes of action, including gross negligence or recklessness in the supervision of her conservatorship, breach of fiduciary duties, and civil conspiracy. Specifically, Plyler alleged that she never received the proceeds held for her benefit under the conservatorship managed by Burns, that Burns converted the proceeds for his own benefit, and that HCPC was liable for negligent supervision of the management of her conservatorship.

HCPC filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP. In its memorandum in support of the motion to dismiss, HCPC asserted affirmative defenses under the South Carolina Tort Claims Act ("Tort Claims Act") and that it was protected by common law judicial immunity. After a hearing on the motion, the trial court granted HCPC's motion to dismiss on the grounds that HCPC was entitled to judicial immunity under both the common law and the Tort Claims Act. Plyler appealed, and this Court certified the case from the court of appeals pursuant to Rule 204(b), SCACR. Plyler raises the following issues for review:[1]

I. Did the trial court err in granting HCPC's motion to dismiss on the basis of the common law doctrine of judicial immunity?

II. Did the trial court err in considering HCPC's motion to dismiss because HCPC waived its right to assert common law judicial immunity?

III. Did the trial court err in declining to apply a gross negligence standard in its review of HCPC's entitlement to immunity pursuant to the Tort Claims Act?

---

1. We have re-framed the issues presented by Plyler to more concisely conform to the arguments presented in the appellate briefs.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to 12(b)(6), SCRCP, the trial court should consider only the allegations set forth on the face of the plaintiff's complaint. *Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995). A 12(b)(6) motion should not be granted if "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Id.* The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. *Toussaint v. Ham,* 292 S.C. 415, 416, 357 S.E.2d 8, 9 (1987). Further, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action. *Id.*

## LAW/ANALYSIS

### I. Common Law Judicial Immunity

Plyler contends the trial court erred in granting HCPC's motion to dismiss on the basis of the common law doctrine of judicial immunity. We disagree.

Judicial immunity serves as a bar to litigation against a judicial officer in certain circumstances. *O'Laughlin v. Windham,* 330 S.C. 379, 385, 498 S.E.2d 689, 692 (Ct.App. 1998). This immunity, however, is not absolute. "[J]udges and other officials are not entitled to judicial immunity if: (1) they did not have jurisdiction to act; (2) the act did not serve a judicial function; or (3) the suit is for prospective, injunctive relief only." *Faile v. South Carolina Dep't of Juvenile Justice,* 350 S.C. 315, 324, 566 S.E.2d 536, 541 (2002) (internal citations omitted).

The majority of Plyler's argument against the application of common law judicial immunity is based on whether HCPC was performing a judicial act when supervising Plyler's conservatorship estate. Plyler does not dispute the jurisdiction of the probate court. Plyler does, however, contend that her claims against HCPC involve prospective, injunctive relief because she requests an accounting and relief from HCPC's orders.

First, assuming the requested accounting qualifies as injunctive relief, Plyler has made no allegation that HCPC ever possessed any property or money on her behalf. Therefore, the request for an accounting has no application to HCPC. Second, Plyler's requested relief from HCPC's orders does not require any injunctive action against HCPC, but instead implies injunctive relief against any of the other defendants seeking to utilize those orders in their defense. Accordingly, the prospective, injunction relief exception to judicial immunity has no application to HCPC.

■ For these reasons, we focus our analysis on the determination of whether HCPC performed a judicial act in supervising the management of Plyler's conservatorship.

■ In determining whether an act serves a judicial function, the Court must look to the nature and function of the act as opposed to the title of the person committing the act. *Id.* at 325, 566 S.E.2d at 541. The line must be drawn between acts which are truly judicial and those acts which simply happen to have been performed by a judge. *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

■ In *Forrester*, the United States Supreme Court discussed the difference between "judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Id.* When a court undertakes any adjudicative act within its jurisdiction, regardless of allegations of malicious or corrupt motive, the act is considered a judicial function for which the court will have absolute immunity. *Id.* However, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Id.* at 228, 108 S.Ct. 538. Furthermore, judicial immunity has not been applied to a judge's action pursuant to rulemaking authority. *Id.*

In South Carolina, the probate court has jurisdiction to determine the need for the protection of the minor's assets. S.C.Code Ann. § 62–5–402 (2005). Section 62–5–402 provides:

After the service of notice in a proceeding seeking the appointment of a conservator or other protective order and

until termination of the proceeding, the probate court in which the petition is filed has:

(1) exclusive jurisdiction to determine the need for a conservator or other protective order until the proceedings are terminated;

(2) exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of this State must be managed, expended, or distributed to or for the use of the protected person or any of his dependents; and

(3) concurrent jurisdiction to determine the validity of claims for or against the person or estate of the protected person except as limited by Section 62–5–433.

In the instant case, Plyler alleges that HCPC negligently supervised the management of her conservatorship estate. Plyler contends that the court's act of supervising a conservator is fundamentally an administrative act because it requires only the handling of paperwork and other clerical actions. In support of this contention, Plyler relies on the deposition testimony of Burns stating that he rarely discussed the handling of the conservatorship with the judge, he never appeared in the actual courtroom, and he conducted most of his interaction with the staff of the probate court over the phone.

Despite Plyler's contention, the informality of Burns' interaction with the probate court is not determinative of the character of the court's acts. Although a cursory examination of the relationship between a conservator and the probate court may appear to require only the handling of paperwork, the probate court's role is actually much more involved. In accordance with the statutory jurisdiction in § 62–5–402, the probate court has the responsibility to determine whether the conservatorship estate of the minor is effectively "managed, expended, or distributed to or for the use of the protected person or any of his dependents." These determinations involve an adjudication of whether the conservator is acting within the confines of the law with respect to the management of the conservatorship. Such determinations are precisely the type of judicial acts to which immunity applies.

Because Plyler's allegations involving HCPC concern only those acts which would be considered judicial in nature, we

find that the trial court did not err in granting HCPC's motion to dismiss based on common law judicial immunity.

## II. Waiver

 Plyler argues the trial court erred in considering HCPC's motion to dismiss because HCPC waived its right to assert common law judicial immunity. Particularly, Plyler contends that HCPC did not satisfy the pleading requirements for affirmative defenses in accordance with Rule 8(c), SCRCP, because HCPC included the defense of judicial immunity in its memorandum in support of the motion to dismiss, but not in the motion to dismiss itself. We disagree.

 Immunity is an affirmative defense which must be pled. *Rayfield v. South Carolina Dep't of Corr.,* 297 S.C. 95, 105, 374 S.E.2d 910, 915 (Ct.App.1988); *see* Rule 8(c), SCRCP. Generally, "a failure to plead an affirmative defense is deemed a waiver of the right to assert it." *Whitehead v. State,* 352 S.C. 215, 220, 574 S.E.2d 200, 202 (2002). However, because the aim of this pleading requirement is to avoid surprise defenses, *see* Rule 8(c), SCRCP note, many courts allow the assertion of affirmative defenses despite a technical failure to comply with the initial pleading requirements where the defense is timely raised to the trial court without resulting in unfair surprise to the opposing party. *See Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 612 (4th Cir.1999), *abrogated on other grounds by Desert Palace Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *and Floyd v. Ohio Gen. Ins. Co.,* 701 F.Supp. 1177, 1187 (D.S.C.1988). *See also Gardner v. Newsome Chevrolet–Buick, Inc.,* 304 S.C. 328, 404 S.E.2d 200 (1991) (providing that where there are no South Carolina cases directly on point, the Court may look to the construction placed on the corresponding federal rules of civil procedure).

This Court has not addressed the issue presented in the instant case, however, the court of appeals decided a similar issue in the case of *Wright v. Sparrow,* 298 S.C. 469, 470, 381 S.E.2d 503, 504 (Ct.App.1989). In *Wright,* the plaintiff argued that the trial court erred in granting summary judgment to the defendant because the notice of the motion failed to specify the particular grounds for the motion. *Id.* The notice

indicated that the motion would be "based on the attached affidavits and memorandum in support of the motion." The memorandum in support of the motion set forth the exact bases for the motion. *Id.* at 471, 381 S.E.2d at 505. The court of appeals found that the trial court properly considered the arguments presented in the summary judgment motion and supporting memorandum despite the defendant's failure to include the specific grounds in the notice. *Id.*

In the instant case, HCPC timely filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP. The motion outlined HCPC's position that Plyler's claim was barred by the exceptions to the waiver of sovereign immunity contained in the Tort Claims Act, including the judicial acts exception. The motion did not include the affirmative defense of common law judicial immunity. However, HCPC indicated that the grounds for the motion would be more fully discussed in the supporting memorandum. The supporting memorandum detailed the grounds for dismissal included in the motion, and also included the defense of common law judicial immunity. Plyler received the supporting memorandum several days before the hearing.

As a practical matter, the analysis of judicial immunity pursuant to both the Tort Claims Act and the common law is substantially similar. *See Faile v. South Carolina Dept. of Juvenile Justice,* 350 S.C. 315, 566 S.E.2d 536 (2002) (discussing "judicial act" under the common law and the Tort Claims Act). Plyler concedes that she received timely notice of HCPC's assertion of judicial immunity pursuant to the Tort Claims Act. In light of these circumstances, Plyler has not demonstrated that she suffered prejudice or unfair surprise in any way.

Therefore, we find that although HCPC failed to include the affirmative defense of common law judicial immunity in its motion to dismiss, HCPC's inclusion of the defense in the supporting memorandum was sufficient to comply with the intent of Rule 8(c), SCRCP, in this case. Accordingly, the trial court did not err in considering the issue of common law judicial immunity in the hearing on HCPC's motion to dismiss.

Alternatively, Plyler argues that the court erred in failing to grant her a continuance in order to prepare her

argument in opposition to HCPC claim of common law judicial immunity. Plyler contends that HCPC's failure to comply with the time requirements of Rule 6(d), SCRCP, and its failure to comply with the specificity requirements of Rule 7(b)(1), SCRCP, caused her to suffer prejudice and deprived her of due process. We disagree.

■ The grant or denial of a continuance is within the sound discretion of the trial judge and is reviewable on appeal only when an abuse of discretion appears from the record. *Bridwell v. Bridwell*, 279 S.C. 111, 112, 302 S.E.2d 856, 858 (1983). Moreover, the denial of a motion for a continuance on the ground that counsel has not had time to prepare is rarely disturbed on appeal. *See State v. Babb*, 299 S.C. 451, 385 S.E.2d 827 (1989).

■ Rule 6(d), SCRCP, provides in part that "a written motion . . . and notice of the hearing thereof, shall be served not later than ten days before the time specified for the hearing, unless a different period is fixed by these rules or by an order of the court." Additionally, Rule 7(b)(1), SCRCP states that "an application to the court for an order shall be by motion which . . . shall state with particularity the grounds therefor." However, where noncompliance with the technical requirements of the rules causes no prejudicial effect, failure by the trial court to grant a continuance on that basis is harmless error. *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987).

Plyler correctly asserts that HCPC did not comply with the technical requirements of Rules 6(d) and 7(b)(1), SCRCP. However, Plyler's claims that she had insufficient time to prepare for the hearing are misleading. Because the defenses of judicial immunity pursuant to the Tort Claims Act and the common law require similar analysis, and because Plyler received adequate notice of HCPC's assertion of judicial immunity under the Tort Claims Act, we find that Plyler cannot make the requisite showing of prejudice necessary to reverse the trial court's denial of her motion for a continuance.

Because Plyler suffered no prejudice from HCPC's assertion of common law judicial immunity in its memorandum in support of its motion to dismiss, the trial court did not err in denying Plyler's request for a continuance.

## III. Tort Claims Act

Plyler argues that the trial court erred in declining to apply a gross negligence standard in its review of HCPC's entitlement to immunity under the Tort Claims Act. Specifically, Plyler alleges that the trial court should have applied the gross negligence standard contained in S.C.Code Ann. §§ 15–78–60(12) and (25) to all exceptions asserted by HCPC. We disagree.

The Tort Claims Act provides that "the State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein." S.C.Code Ann. § 15–78–40 (2005).

> The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense. Provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed in favor of limiting liability.

*Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999).

When a governmental entity asserts an exception to the waiver of immunity and any other applicable exception contains a gross negligence standard, the Court must read the gross negligence standard into all of the exceptions under which the entity seeks immunity. *See id.* at 394, 520 S.E.2d at 153. Gross negligence is defined as "the failure to exercise slight care." *Id.* at 395, 520 S.E.2d at 153. It has also been defined as "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." Gross negligence "is a relative term, and means the absence of care that is necessary under the circumstances." *Id.*

HCPC asserted several exceptions to the waiver of immunity contained in the Tort Claims Act, including S.C.Code Ann. §§ 15–78–60(1), (2), and (3) (2005) as a bar to Plyler's claims. These sections provide that a "governmental entity is not

liable for a loss resulting from: (1) legislative, judicial, or quasi-judicial action or inaction; (2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature; [or] (3) execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process." *Id.*

The trial court granted HCPC's motion to dismiss based in part on these exceptions. Plyler, however, asked the court to consider the additional exceptions contained in S.C.Code Ann. §§ 15–78–60(12) and (25). Plyler contends that these sections applied to HCPC and also required the court to apply the gross negligence standard to all other exceptions asserted by HCPC.

■ Section 15–78–60(12) provides an exception to the waiver of immunity where the "licensing powers or functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority except when the power or function is exercised in a grossly negligent manner." Generally, this exception is applied where a governmental agency actually engages in licensing functions. *See Steinke*, 336 S.C. at 373, 520 S.E.2d at 152 (holding that the Department of Labor, Licensing and Regulation was grossly negligent in failing to revoke a permit at an amusement park).

■ Section 15–78–60(25) provides an exemption to the waiver of immunity where the "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." The section is usually applied in situations where a governmental entity is responsible for the actual physical accountability for the person and not merely the person's interest in property. *See Jinks v. Richland County*, 355 S.C. 341, 585 S.E.2d 281 (2003) (holding the county detention center responsible for the conduct of correctional officers acting in a grossly negligent manner in monitoring an arrestee).

In the instant case, Plyler contends that § 15–78–60(12) is applicable to the actions of HCPC because the court issued a "Certificate of Appointment" to Burns. Plyler misconstrues the probate court's role in issuing the certificate and also erroneously stretches the intention of the statute. The probate court issues a certificate of appointment only after a petition for appointment is filed. This petition commences an action where the probate court makes a judicial determination and orders appointment of a conservator. The certificate of appointment is merely the method by which the court effects its order, and is not an issuance of a license or similar instrument. Accordingly, this exception has no applicability to Plyler's case and should not be utilized as a means to interject a gross negligence standard into the analysis of the issues presented in this case.

Section 15–78–60(25), regarding the custody and control of clients, is similarly inapplicable in this situation. The unambiguous language of the statute clearly refers to the protection of the physical person. Plyler makes no claim that the probate court breached any duty to protect her from physical harm. Accordingly, Plyler does not qualify as a "client" pursuant to this provision and therefore may not use it to extend the gross negligence standard to the other provisions of the Tort Claims Act asserted by HCPC.

Therefore, we find that the trial court did not err in declining to apply a gross negligence standard in its review of the exemptions to the waiver of immunity under the Tort Claims Act.

### Conclusion

For the foregoing reasons, we affirm the trial court's decision.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.