JUSTICE JAMES :
*745 **497 We granted Georgetown County's petition for a writ of certiorari to review the court of appeals' decision in Repko v. County of Georgetown , 416 S.C. 22, 785 S.E.2d 376 (Ct. App. 2016). Georgetown County argues the court of appeals erred in (1) construing the County Development Regulations as creating a private duty of care to Respondent David Repko; (2) holding the South Carolina Tort Claims Act[1] (TCA) preempted certain language contained in the Regulations; (3) applying the "special duty" test; (4) finding Brady Development Co., Inc. v. Town of Hilton Head Island , 312 S.C. 73, 439 S.E.2d 266 (1993), distinguishable from the instant case; (5) reversing the trial court's ruling that the County is entitled to sovereign immunity under the TCA; and (6) rejecting the County's additional sustaining ground that Repko's claim is barred by the statute of limitations. We address only issue (5) and hold the court of appeals erred in reversing the trial court's determination that the County was immune from liability under subsection 15-78-60(4) of the TCA (2005); we therefore reverse the court of appeals and reinstate the directed verdict granted to the County by the trial court. We vacate the court of appeals' opinion.
I.
In the early 2000s, Harmony Holdings, LLC (the Developer) began developing Harmony Township (Harmony), a residential subdivision in the County. In South Carolina, most localities will not allow a developer to sell lots in a residential development without the required infrastructure-roads, water, drainage, and sewer-being completed. The County adopted regulations addressing the completion of infrastructure in major residential subdivisions. The record on appeal contains only Article V of the Regulations (Article V). Article V, Section 3-1 (Section 3-1) provides:
**498 Financial guarantees may be posted in lieu of completing improvements required by [the Regulations] to allow for the recording of a final plat or to obtain building permits for properties for which ownership will be transferred. ...
Acceptance of financial guarantees is discretionary and [the] County reserves the right to refuse a financial guarantee for any remaining improvements and require that such improvements be completed before the recording of a final plat or issuance of building permits. Acceptance of a financial guarantee by [the] County shall not be construed as an obligation to any other agency, utility or property owner within affected developments.
Therefore, in the discretion of the County, a developer could post cash, bonds, letters of credit, or other financial guarantees instead of completing the infrastructure before selling lots. When the Developer began developing Harmony Phase 2-D-1 in 2006, the County determined it would allow the requirement of a financial guarantee to be satisfied by the Developer's posting of a letter of credit (LOC) to cover the remaining cost of completion of infrastructure. An LOC is a letter issued by a bank that entitles the person named in the letter to draw up to a specified sum from the bank. The County had policies and procedures in place that governed its oversight of the completion of infrastructure and reductions in the LOC. One such policy was the requirement that the LOC be at least equal to 125% of the cost of completing *746 the remaining infrastructure. If the County handled LOC procedures properly, as the Developer completed certain stages of infrastructure, the County would take steps to verify the completion of the work, and the County would notify the issuing bank that the LOC could be reduced accordingly. If handled properly, this arrangement would allow the County to draw on the LOC if the Developer failed to complete or properly complete the required infrastructure.
In 2006, the Developer submitted an LOC from Wells Fargo in the amount of $1,301,705.63-representing 125% of the projected cost of completing the infrastructure-to the County planning department for Harmony Phase 2-D-1. By April 2007, the County had approved the Developer's requests to reduce the LOC four times; after the fourth reduction, the LOC totaled $156,704.03. However, the cost of completing the **499 remaining infrastructure was over one million dollars. In August 2007, the cost of unbuilt infrastructure remained over one million dollars, and the Developer informed the County it no longer had the financial means to complete any additional infrastructure. At that point, the LOC was approaching its expiration date. Shortly thereafter, the Developer declared bankruptcy. A new developer took over the project and requested the County to authorize the release of LOC funds to help complete the infrastructure; however, the County deemed this new developer to be untrustworthy and refused to allow the release of the LOC funds. The new developer withdrew from the project. Those who purchased lots in Harmony Phase 2-D-1 are unable to build on their lots because the infrastructure has not been completed.
II.
Respondent David Repko, the owner of two lots in Harmony Phase 2-D-1, commenced this action against the County alleging that the County negligently and grossly negligently failed to comply with or enforce its rules, regulations, and written policies governing its handling of the LOC. The County answered, alleging it did not owe a private duty of care to Repko and alleging that even if it did, the TCA barred Repko's claims. Specifically, the County pled it was immune from liability pursuant to subsections 15-78-60(1), (2), (4), (5), (12), and (13) of the TCA. Only subsections (4) and (12) are pertinent to this appeal. The County also alleged Repko's claims were barred by the two-year statute of limitations in section 15-78-110 of the TCA.
The case went to trial, and at the close of Repko's case, the trial court granted the County's directed verdict motion, finding (1) the Regulations did not create a private duty of care owed by the County to Repko and (2) the County was immune from liability under subsections 15-78-60(4), (5), and (13) of the TCA. The trial court ruled the County was not entitled to a directed verdict pursuant to the TCA's two-year statute of limitations. The trial court agreed with Repko's argument that subsection 15-78-60(12) did not apply to this case and ruled the County was not entitled to immunity under subsection (12). The court of appeals reversed the directed verdict and remanded **500 for a new trial. Repko v. Cty. of Georgetown , 416 S.C. 22, 42, 785 S.E.2d 376, 386 (Ct. App. 2016).
We address only the court of appeals' holding that the trial court erred in granting a directed verdict under subsection 15-78-60(4) of the TCA. As our holding on this point is dispositive of the appeal, we need not address the remaining issues. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when disposition of a prior issue is dispositive).
III.
An appellate court will reverse the trial court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law. Law v. S.C. Dep't of Corr. , 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006) ;
*747 McMillan v. Oconee Mem'l Hosp., Inc. , 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006). When reviewing a ruling on a motion for a directed verdict, this Court, like the trial court, must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Hurd v. Williamsburg Cty. , 363 S.C. 421, 426, 611 S.E.2d 488, 491 (2005).
In a negligence action, "[t]he court must determine, as a matter of law, whether the law recognizes a particular duty." Steinke v. S.C. Dep't of Labor, Licensing & Regulation , 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999). "If there is no duty, then the defendant in a negligence action is entitled to a directed verdict." Id. There is a dispute as to whether the Regulations created a private duty of care owed by the County to Repko. We need not resolve that dispute, as we conclude that even if such a duty was created, the County is immune from liability to Repko under subsection 15-78-60(4) of the TCA.
Repko's action against the County is based upon his contention that the County was grossly negligent in allowing the Developer's LOC to be reduced from the original $1,301,705.63 to $156,704.03 without first ascertaining that the LOC continued to cover 125% of the cost of remaining infrastructure.
**501 The essence of Repko's claim is that the County was grossly negligent in failing to comply with or enforce its rules, regulations, and policies governing its handling of the LOC. The County maintains that even if it were grossly negligent, it is immune from liability to Repko pursuant to subsection 15-78-60(4) of the TCA. We agree with the County.
In response to our abolition of the doctrine of sovereign immunity in McCall v. Batson , 285 S.C. 243, 329 S.E.2d 741 (1985), the General Assembly enacted the TCA. See S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2017). Section 15-78-40 provides that a political subdivision such as the County is "liable for [its] torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages " found in the TCA. (emphasis added). Subsection 15-78-20(a) provides in part, "The General Assembly recognizes the potential problems and hardships each governmental entity may face being subjected to unlimited and unqualified liability for its actions." Subsection 15-78-20(f) provides, "The provisions of [the TCA] establishing limitations on and exemptions to the liability of the [governmental entity or political subdivision], while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the [governmental entity or political subdivision]." Section 15-78-60 lists forty exceptions to the waiver of sovereign immunity.
In its answer to Repko's complaint, the County pled several of the exceptions to the waiver of immunity found in section 15-78-60, namely those in subsections (1), (2), (4), (5), (12), and (13). Of these six, subsection (4) is the centerpiece of the County's claim of immunity. Subsection 15-78-60(4) provides:
[A] governmental entity is not liable for a loss resulting from[ ] adoption, enforcement , or compliance with any law or failure to adopt or enforce any law , whether valid or invalid, including, but not limited to, any charter, provision, ordinance , resolution, rule, regulation , or written policies [.]
(emphasis added).
The County also pled it was entitled to immunity pursuant to subsection 15-78-60(12), which provides:
**502 [A] governmental entity is not liable for a loss resulting from[ ] licensing powers or functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority except when the power or function is exercised in a grossly negligent manner [.]
(emphasis added).
After Repko rested at trial, the County moved for a directed verdict under subsections *748 (4), (5), (12), and (13). Again, only subsections (4) and (12) are at issue in this appeal. During argument of the directed verdict motion, Repko argued subsection (12) did not apply to this case because the County's actions did not involve a licensing power or function. Specifically, Repko argued to the trial court that the duty owed to him by the County "doesn't have anything to do with the licensing function." The trial court agreed and stated in its ruling from the bench, "I don't think [subsection (12) ] is applicable, the licensing function." In its written order, the trial court did not grant a directed verdict to the County pursuant to subsection (12) but granted a directed verdict to the County pursuant to subsections (4), (5), and (13).
Repko moved for reconsideration and argued, among other things, that because the County simply pled it was entitled to immunity under subsection (12), the gross negligence standard contained in subsection (12) must be read into the immunity provisions contained in subsections (4), (5), and (13). Repko had never presented this argument prior to the motion for reconsideration. The trial court summarily denied Repko's motion in a form order. It is settled that "[a]n issue may not be raised for the first time in a motion to reconsider." Johnson v. Sonoco Prods. Co. , 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009). As we discuss in section B below, even if this issue had been timely raised to the trial court, the County was entitled to a directed verdict as a matter of law.
As we discuss in section A immediately below, Repko never argued to the trial court or even to the court of appeals that the immunity provision in subsection 15-78-60(12) applied to the facts of this case. However, the court of appeals sua **503 sponte raised and ruled upon the issue. In so doing, the court of appeals did not squarely address the issue of whether the gross negligence exception contained in subsection (12) must be read into the immunity provision contained in subsection (4). Again, we address the merits of this argument in section B below.
A.
We first conclude the court of appeals erred in sua sponte raising and ruling upon an issue that Repko never advanced to the trial court. As noted, Repko successfully argued at the directed verdict stage that the duty owed to him by the County "doesn't have anything to do with the [County's] licensing function." At no time before the trial court or in his brief to the court of appeals did Repko argue that his loss resulted from the County's exercise of its licensing powers or functions, as contemplated by subsection (12).[2] Despite the fact that Repko never took such a position, the court of appeals raised the argument sua sponte and concluded:
Subsection 15-78-60(12) grants immunity for losses resulting from the "renewal" of a permit. The County approved reductions of the letter of credit and, in doing so, allowed the renewal of the permit to sell lots even though the letter of credit had been improperly reduced. Based on this evidence, a jury could have found subsection 15-78-60(12) applied.
Repko , 416 S.C. at 41, 785 S.E.2d at 385-86.
This was error. An appellate court may not reverse a lower court order based on a legal or factual premise not advanced by the party who lost at the trial court level. In I'On, L.L.C. v. Town of Mt. Pleasant , we noted "the long-established preservation requirement that the losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments." 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). We also clarified that while an appellate court may affirm a lower court judgment for any reason appearing in the **504 record, "[a]n appellate court may not, of course, reverse for any reason appearing in the record." Id. at 421-22, 526 S.E.2d at 724. *749 The court of appeals sua sponte raised and ruled upon an issue Repko never presented to the trial court. Therefore, we reverse the court of appeals' holding that a jury issue exists as to whether subsection 15-78-60(12) applies to the facts of this case.
B.
Because it concluded that "a jury could have found subsection 15-78-60(12) applied," the court of appeals did not address the issue Repko presents to this Court-whether the gross negligence standard contained in subsection (12) must be read into subsection (4) simply because the County initially pled it was entitled to immunity under subsection (12). Repko has advanced no theory of liability other than the County's grossly negligent failure to comply with or enforce its rules, regulations, and policies governing the handling of the LOC. This claim runs headlong into the County's central defense under subsection (4) that it is immune from liability for such a failure.
Repko's very able appellate counsel rightly conceded at oral argument that because subsection (4) does not contain a gross negligence standard, standing alone, subsection (4) would entitle the County to immunity from liability from its failure to comply with or enforce the Regulations. However, Repko claims our case law requires the gross negligence standard contained in subsection (12) to be read into subsection (4) simply because the County initially pled it was entitled to immunity under subsection (12). We disagree.
This Court and the court of appeals have held that when an applicable exception to the waiver of immunity contains a gross negligence standard, that gross negligence standard must be read into all other applicable exceptions that do not contain a gross negligence standard. Consequently, the immunity provision containing the gross negligence standard must actually apply to the case before it can be read into another immunity provision. In Steinke , we held:
**505 In sum, we recognize the trial court often faces Tort Claims Act cases in which at least one of the asserted exceptions contains the gross negligence standard while other asserted exceptions do not. We hold that when an exception containing the gross negligence standard applies, that same standard will be read into any other applicable exception.
336 S.C. at 398, 520 S.E.2d at 155 (emphasis added). In Chakrabarti v. City of Orangeburg , the court of appeals held that "[w]hen an exception that contains the gross negligence standard applies to a case, the gross negligence standard is read into any of the other applicable exceptions." 403 S.C. 308, 319, 743 S.E.2d 109, 115 (Ct. App. 2013).
In Plyler v. Burns , a conservatorship beneficiary sued the Horry County probate court, claiming the probate court mishandled the administration of the conservatorship. 373 S.C. 637, 643-44, 647 S.E.2d 188, 191-92 (2007). The probate court pled it was entitled to immunity pursuant to subsections 15-78-60(1), (2), and (3); none of these subsections contain a gross negligence standard. Id. at 651-52, 647 S.E.2d at 196. The trial court dismissed the action, ruling the probate court was immune from liability pursuant to all three subsections. Id. at 652, 647 S.E.2d at 196. The plaintiff claimed subsections (12) and (25) also applied to the probate court's actions and that since these two subsections contain a gross negligence standard, the gross negligence standard should have been read into subsections (1), (2), and (3). Id. We held the trial court did not err in refusing to read the gross negligence standard into subsections (1), (2), and (3) because subsection (12) had "no applicability " to the case and because subsection (25) was "similarly inapplicable ." Id. at 653, 647 S.E.2d at 197 (emphasis added).
Repko argues Jones v. Lott , 387 S.C. 339, 692 S.E.2d 900 (2010), stands for the proposition that when a governmental entity simply pleads an immunity provision containing a gross negligence standard, the gross negligence standard must be read into all other immunity subsections. In Jones , the defendant sheriff pled he was entitled to immunity *750 from suit pursuant to subsections 15-78-60(6) and (21), neither of which contains a gross negligence standard. 387 S.C. at 344-45, 692 S.E.2d at 903. The plaintiff claimed subsection 15-78-60(25), which contains a gross negligence standard, applied to the **506 case; however, the sheriff did not plead subsection (25) as a basis for immunity, and nothing within subsection (25) was applicable to the case. Id. at 347-48, 692 S.E.2d at 904-05. We affirmed the trial court's grant of a directed verdict to the sheriff. Id. at 349, 692 S.E.2d at 905. While we did conclude in Jones that the gross negligence standard in subsection 15-78-60(25) was not to be read into other applicable subsections because the sheriff did not plead subsection (25) as a basis for immunity, we emphasized our holding in Steinke that "the better practice is to allow the government to assert all relevant exceptions, and apply the gross negligence standard to all when it is contained in one applicable exception." 387 S.C. at 347, 692 S.E.2d at 904 (emphasis added) (quoting Steinke , 336 S.C. at 397, 520 S.E.2d at 154 ).
Repko also argues Proctor v. Department of Health & Environmental Control , 368 S.C. 279, 628 S.E.2d 496 (Ct. App. 2006), supports his argument that the gross negligence standard of subsection 15-78-60(12) should be read into the other subsections simply because the County pled subsection (12). In Proctor , Mr. Proctor owned a DHEC-permitted waste tire recycling and processing facility. The permit greatly enhanced the delivery of waste tires to his facility by new tire wholesalers and retailers. Id. at 287-88, 628 S.E.2d at 500-01. DHEC concluded Proctor was in violation of the regulations governing his permit, levied a fine against him, and removed him from the rebate list of approved facilities. Id. at 288, 628 S.E.2d at 501. Proctor sued DHEC pursuant to subsection 15-78-60(12), alleging DHEC was grossly negligent in revoking its approval for him to be on the rebate list. Id. at 289-90, 628 S.E.2d at 502. As noted, subsection (12) contains a gross negligence standard. DHEC claimed it was entitled to immunity under subsections 15-78-60(1), (2), (3), (4), (5), (12), and (13). Id. at 297, 628 S.E.2d at 506. At trial, DHEC did not challenge the applicability of subsection (12) as it was squarely applicable to the facts of the case; rather, DHEC argued it was entitled to a directed verdict because its conduct did not rise to the level of gross negligence. The trial court denied DHEC's motion for a directed verdict under all subsections, and the trial court charged the jury that the gross negligence standard in subsection (12) was to be read into all other applicable subsections providing for immunity. The court of **507 appeals affirmed, holding that since Proctor proceeded on the theory that DHEC was liable under subsection (12), the trial court's charge was proper. Id. at 312, 628 S.E.2d at 514. Proctor is of no assistance to Repko, because in Proctor , subsection (12)-with its gross negligence standard-was applicable to the facts of that case. In the instant case, subsection (12) is not applicable in the first instance, and no other immunity subsection containing a gross negligence standard is applicable to this case.
Plyler and Steinke clearly dictate that in order for the gross negligence standard from one immunity provision to be read into an immunity provision that does not contain a gross negligence standard, the immunity provision containing the gross negligence standard must first apply to the case. We disavow any suggestion to the contrary in Jones . In many instances, a governmental entity may initially plead entitlement to immunity pursuant to a subsection containing a gross negligence standard. In many of those instances, that particular immunity may ultimately not apply to the facts of the case. In such a case, the gross negligence standard contained in that immunity is not to be read into applicable immunity subsections that do not contain a gross negligence standard. We reaffirm our holding in Steinke "that when an exception containing the gross negligence standard applies, that same standard will be read into any other applicable exception." 336 S.C. at 398, 520 S.E.2d at 155.
Here, at the directed verdict stage, Repko argued-correctly we must add-that subsection *751 15-78-60(12) did not apply to this case. The trial court agreed and so ruled. Repko is left only with the argument that the gross negligence standard in subsection (12) should be read into subsection 15-78-60(4) simply because the County originally pled subsection (12) as a defense. This argument fails as a matter of law; standing alone, subsection (4) provides immunity to the County. Therefore, we find the trial court correctly directed a verdict for the County pursuant to subsection 15-78-60(4).
IV.
The trial court properly granted a directed verdict to the County on the ground that the County is immune from **508 liability pursuant to subsection 15-78-60(4) of the TCA. We therefore REVERSE the court of appeals and reinstate the directed verdict. We vacate the opinion of the court of appeals.
BEATTY, C.J., KITTREDGE, J., and Acting Justice Gordon G. Cooper, concur. HEARN, J., concurring in result only in a separate opinion.
JUSTICE HEARN :
I concur in the result reached by the majority but write separately, as I believe the first question we must address is whether the County owed a private duty to Repko. Arthurs ex rel. Estate of Munn v. Aiken Cty. , 346 S.C. 97, 105, 551 S.E.2d 579, 583 (2001) ("Only if a duty is found, and the other negligence elements shown, will it ever be necessary to reach the TCA immunities issue."). Because I agree with the trial court that the County owed no such duty, I would reverse the court of appeals on that ground, thus ending the inquiry.
As the majority discussed, the County promulgated regulations concerning the completion of infrastructure in certain residential communities. Section 3.1 of the ordinance expressly states, "Acceptance of a financial guarantee by Georgetown County shall not be construed as an obligation to any other agency, utility or property owner within the affected developments."
In viewing this provision, it is important to note that this Court has recognized that the public duty rule and the South Carolina Tort Claims Act are not incompatible. Arthurs , 346 S.C. at 103, 551 S.E.2d at 582 (holding the public duty rule is still applicable where the plaintiff's claim is grounded upon a statutory duty, even after the enactment of the Tort Claims Act). Under the public duty rule, where a statute levies a duty on public officials to "discharg[e] their statutory obligations," they generally are not liable in a private cause of action because the statute is presumed to be for the benefit of the public rather than any individual member. Platt v. CSX Transp., Inc. , 388 S.C. 441, 446, 697 S.E.2d 575, 577 (2010). Because this rule forecloses a finding of a legal duty, it is a negative defense that strikes at the core of a plaintiff's negligence claim, unlike the affirmative defense of immunity, which bars liability for an otherwise prima facie case of negligence.
**509 Steinke v. S.C. Dep't of Labor, Licensing & Regulation , 336 S.C. 373, 389, 520 S.E.2d 142, 150 (1999).
However, an exception to the public duty rule applies where the statute demonstrates the drafter's intent to impose a duty upon public officials for the benefit of a specified class of persons. To ascertain legislative intent, this Court has applied the six-factor "special duty test" adopted in Jensen v. Anderson County Dep't of Social Services , 304 S.C. 195, 403 S.E.2d 615 (1991).[3] There, the Court explicitly recognized the test "is in itself an attempt to determine legislative intent;"
*752 in other words, the focus of the inquiry is to determine when the legislature intended to create a special duty owed to a particular class of persons. Id. at 201, 403 S.E.2d at 618. Because the special duty test is merely a tool of statutory construction, I do not believe it is essential that it be applied when the relevant provision unambiguously demonstrates an intent not to impose a private duty. Arthurs , 346 S.C. at 104, 551 S.E.2d at 582 ("[I]t is a rule of statutory construction, that is, a means of determining whether the legislative body that enacted the statute or ordinance intended to create a private cause of action for its breach.").
As the majority described, the County passed an ordinance regulating the planning and development of subdivisions whereby a developer could not sell a lot until the infrastructure was completed-including storm water management, grading of the roads, and utilities. However, section 3.1 afforded the County discretionary authority to accept a developer's financial guarantee in lieu of compliance with the required infrastructure, thereby permitting the developer to sell lots **510 while infrastructure work continued. Section 3.1's text expressly provides the County's discretionary authority "shall not be construed as an obligation to any other agency, utility or property owner..." Because that language clearly evinces the County's intent not to create a duty to property owners, an analysis under the special duty test in Jensen provides minimal, if any, additional guidance in ascertaining the County's intent. While that test is designed to ascertain when the legislature has been "sufficiently specific" to permit an aggrieved party to seek a remedy against a public official, here, the County has been more than "sufficiently specific" that it owes no duty to the property owners.
The court of appeals viewed section 3.1 as a disclaimer preempted by the South Carolina Tort Claims Act. Repko v. Cty. of Georgetown , 416 S.C. 22, 35, 785 S.E.2d 376, 382 (Ct. App. 2016). However, whether an ordinance creates a duty of care concerns only a threshold element of a negligence claim rather than an immunities analysis. Because the Tort Claims Act does not create causes of action or establish duties of care, it does not conflict with the ordinance. See Arthurs , 346 S.C. at 105, 551 S.E.2d at 583 ("The TCA does not create causes of action, but removes the common law bar of sovereign immunity in certain circumstances."). Therefore, I do not believe section 3.1 was preempted by the Tort Claims Act.
Furthermore, this Court's decision in Brady Development Co., Inc. v. Town of Hilton Head Island , 312 S.C. 73, 439 S.E.2d 266 (1993), guides our analysis. In Brady , pursuant to a Hilton Head Development Standards Ordinance, a developer posted a letter of credit guaranteeing completion of certain infrastructure requirements, including water and sewer service. Id. at 74, 439 S.E.2d at 267. The town permitted the developer to draw on the letter of credit as the developer completed installing the infrastructure. Id. at 74-75, 439 S.E.2d at 267. Nearing completion of the water and sewer service, the Public Service District denied approval of the infrastructure systems because the developer failed to pay a construction fee, and it eventually declared bankruptcy. Soon thereafter, Brady Development Company purchased a lot and contracted with a builder to construct a house. Id. The builder repeatedly inquired about the water and sewer service to no avail. After the house was substantially completed, it remained **511 vacant due to the lack of water and sewer service, and it eventually burned down. Id.
Brady filed a lawsuit against the Town of Hilton Head Island, alleging it negligently administered the development ordinance. Id. During the trial, the Town moved for a directed verdict, arguing the ordinance did not create a special duty. Id. The trial court denied the motion, and the jury found in favor of Brady. Id. at 76, 439 S.E.2d at 267. On appeal, this Court reversed, holding the *753 Town did not owe a duty to Brady because the essential purpose of the ordinance was "to protect the public from the dangers of overdevelopment on the Island of Hilton Head" rather than "to protect against a particular kind of harm." Id. at 76, 439 S.E.2d at 268. Having failed to satisfy the first element of the special duty test, the Court declined to impose a private duty. Further, the Court concluded if the Town owed a duty, it effectively would be "an insurer of all developments it undertook to inspect and control ... and would likely discourage all efforts at such control." Id. at 77, 439 S.E.2d at 268.
Significantly, the Court in Brady rejected imposing a private duty into an ordinance that was silent on whether such a duty was created. The Court did look to the ordinance to determine the first element of the test-the essential purpose of the statute, as the ordinance stated, "The purpose of this chapter is to promote the public health, safety and general welfare ... and to facilitate the timely and adequate provision of transportation, water, sewage disposal, schools, parks and other requirements." Id. Citing that provision, the Court concluded the ordinance did not create a special duty because the first element was not satisfied.
The facts here are even more compelling than in Brady because the ordinance clearly demonstrates the County's intent not to confer a private duty. Finding that a duty existed here would require overruling Brady .[4] Therefore, because I **512 believe the County did not owe a duty, I would decline to reach the immunities issue under the Tort Claims Act. Accordingly, I concur in result only.

S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2017).

Though not dispositive of this issue, we are compelled to note that Repko advanced to the trial court the opposite of the argument the court of appeals sua sponte raised and ruled upon.

As set forth in Jensen , the special duty test encompasses:
(1) an essential purpose of the statute is to protect against a particular kind of harm;
(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;
(3) the class of persons the statute intends to protect is identifiable before the fact;
(4) the plaintiff is a person within the protected class;
(5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and
(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.
Jensen , 304 S.C. at 200, 403 S.E.2d at 617.

Even an analysis under the special duty test reaches the same result because Repko fails to satisfy the third element-the class of persons the statute intends to protect is identifiable before the fact. Section 3.1 specifically noted, "Acceptance of a financial guarantee by [the County] shall not be construed as an obligation to any ... property owner within the affected development ." Therefore, it would be illogical to consider Repko, as a property owner, as part of a class the County intended to protect when the ordinance expressly provides otherwise.