**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mitch Randall Yawn and Juanita Mae Stanley d/b/a Flowertown Bee Farm and Supplies, Appellants,

v.

Dorchester County, Respondent.

Appellate Case No. 2023-000951

―――――――――

Appeal From Dorchester County
Roger M. Young, Sr., Circuit Court Judge

―――――――――

Unpublished Opinion No. 2026-UP-062
Submitted November 3, 2025 – Filed February 18, 2026

―――――――――

**AFFIRMED**

―――――――――

Michael T. Rose, of Mike Rose Law Firm, PC, of Summerville, and W. Andrew Gowder, Jr., of Austen & Gowder LLC, of Charleston, for Appellants.

Roy Pearce Maybank, of Maybank Law Firm, LLC, of Charleston, for Respondent.

―――――――――

**PER CURIAM:** Mitch Randall Yawn and Juanita Mae Stanley d/b/a Flowertown Bee Farm and Supplies (collectively, Appellants) appeal the circuit court's grant of

summary judgment to Dorchester County (the County) on claims of negligence, gross negligence, and trespass, arguing the court erred in (1) finding the County was entitled to an exception to the South Carolina Tort Claims Act's (the TCA) waiver of immunity under South Carolina Code Section 15-78-60(4) on the negligence claims and (2) not finding the evidence clearly showed the County intended to trespass, though it may not have intended or foreseen the consequences of the trespass.  We affirm.

**FACTS**

In 2016, the Zika virus, a mosquito-borne illness, was a growing threat nationwide. Clayton Gaskins, the Mosquito Abatement Coordinator for the County, was contacted in August 2016 by the Department of Health and Environmental Control (DHEC) informing him of three Zika cases reported in the County.  DHEC provided the addresses of the infected individuals and instructed the County to spray mosquito pesticide within a certain radius of the properties.  Following DHEC's directive, the County sent trucks to spray the areas at night; however, some of the locations were inaccessible to trucks; therefore, the spray was to be done using an alternative method.

The County Council approved funds for an aerial spray and contracted with Allen Aviation[1] to conduct the spray.  Pursuant to section 27-1084(A)(4) of the Rules and Regulations (the Regulations) for Enforcement of the South Carolina Pesticide Control Act § 46-13-10, *et. seq.* (2017 & Supp. 2025)(the Act)[2], the public was to be given a 24-hour notice before an aerial spray.  In accordance with this law, the County issued a press release notifying the public of the upcoming spray.  Gaskins kept a list of county residents who were beekeepers, and although he was not required to by law, he had personally notified individual beekeepers of truck sprays

---

[1] Allen Aviation conducted aerial sprays in several counties, including neighboring Berkeley County.
[2] Pesticide use in South Carolina is governed by the Act.  The Act delegates authority regarding pesticide use to the "director," which is defined as "the Director of the Division of Regulatory and Public Service Programs, College of Agricultural Sciences, Clemson University."  S.C. Code Ann. § 46-13-20(k) (2017).  The director is responsible for promulgating regulations regarding the use of pesticides in South Carolina.  S.C. Code. Ann. § 46-13-30 (2017).  The Regulations are contained in Article 17 of the South Carolina Pesticide Control Regulations and govern*, inter alia*, notice requirements. § 46-13-10, *et. seq.* (2017 & Supp. 2025).

in the past as a courtesy.  The day after the spray, Appellants contacted Gaskins stating they were not informed of the aerial spray, and as a result, the pesticide killed approximately 50 beehives.  The County, in conjunction with Clemson University's Department of Pesticide Regulation, began an investigation as required by the Act to determine whether the aerial spray contributed to the bee deaths (the Clemson Investigation).  The report's findings did not eliminate the pesticide's contribution to the bee deaths, but it found no violations as to the aerial mosquito spray.

Appellants filed suit alleging both federal and state constitutional violations, as well as negligence, gross negligence, and trespass claims pursuant to the TCA.  In May 2020, the Federal District Court for the District of South Carolina granted the County's motion for summary judgment as to the federal constitutional claims and remanded the remaining claims to state court.  *See Yawn v. Dorchester County*, 446 F. Supp. 3d 41 (D.S.C. 2020).  The United States Court of Appeals for the Fourth Circuit affirmed the District Court.  *See Yawn v. Dorchester County*, 1 F.4th 191 (4th Cir. 2021).  The only remaining causes of action before the circuit court were the South Carolina constitutional claims, negligence, gross negligence, and trespass pursuant to the Act.

The County moved for summary judgment on all claims.  Following a hearing, the circuit court granted summary judgment in favor of the County as to the negligence, gross negligence, and trespass claims.  In its order, the court found it was undisputed that the County issued a press release, as required, to numerous media outlets prior to the spray.  It cited the Clemson Investigation, which found the County complied with the provisions of the Regulations of the Act.  The court applied the TCA, which governs all tort claims against governmental entities and is the exclusive civil remedy for any alleged tort committed by a governmental entity, its employees, or its agents.  *See* S.C. Code Ann. § 15-78-20 (2005).  The court next addressed section 15-78-60, which provides certain exceptions to the waiver of immunity within the TCA.  The exceptions state a governmental entity is not liable for a loss resulting from specific acts.  The court found the applicable exceptions here were:

> (1)    legislative, judicial, or quasi-judicial action or inaction;
> . . .
> (4)    adoption, enforcement, or compliance with any
> law or failure to adopt or enforce any law, whether valid
> or invalid, including, but not limited to, any charter,

provision, ordinance, resolution, rule, regulation, or written policies; [and]

(5)    the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee.

§ 15-78-60 (2005).

As to Gaskins' failure to personally notify Appellants of the spray, the court found subsection 4 applied. It next applied *Repko v. County of Georgetown*,[3] which addressed similar negligence claims based on a county's failure to abide by its own policies and found the County complied with the notice requirements of the Regulations by issuing the press release greater than 24 hours prior to the application. Thus, the circuit court held the County was immune from suit pursuant to subsection 4 of the TCA. The court next addressed Appellants' trespass claim and found Appellants did not satisfy the "intentional act" requirement for trespass. The court agreed with the conclusion made by the federal District and Fourth Circuit courts that the death of the bees was neither intended nor foreseeable. The court held that under the TCA, the County has wide discretion in its operation of the Mosquito Abatement Program, and the County properly weighed competing alternatives and utilized professionally acceptable standards when conducting the spray. Accordingly, the court granted the County's motion for summary judgment as to the negligence, gross negligence, and trespass claims. This appeal followed.

**STANDARD OF REVIEW**

"Appellate courts apply the same standard of review applied by the trial court to review the grant of summary judgment pursuant to Rule 56(c) of the South Carolina Rules of Civil Procedure." *Williams v. Jeffcoat*, 444 S.C. 224, 233, 906 S.E.2d 588, 593 (2024). "Summary judgment is proper when the pleadings, depositions, affidavits, and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Id*.

**LAW/ANALYSIS**

---

[3] 424 S.C. 494, 818 S.E.2d 743 (2018).

## 1. Negligence Claims

Appellants argue the circuit court erred in granting the County's motion for summary judgment on the negligence claims based on an exception to the TCA's waiver of immunity under section 15-78-60(4) when the County's duty arose not from statutory law, but from the County's own conduct. Specifically, Appellants argue the record presented more than a mere scintilla[4] of evidence that the County had assumed a legal duty to Appellants through its actions. Accordingly, they argue section 15-78-60(4) did not apply because the County's legal duty arose from its assumed duties rather than through written law or policy. We disagree.

### a. Voluntary Undertaking

In analyzing whether Gaskins created a duty, we must ask whether his failure to exercise reasonable care in performing the undertaking increased the risk of harm to Appellants, or Appellants suffered harm because they relied upon Gaskins' undertaking. *See Wright v. PRG Real Est. Mgmt., Inc.*, 426 S.C. 202, 213, 826 S.E.2d 285, 290–91 (2019) ("The recognition of a voluntarily assumed duty in South Carolina jurisprudence is rooted in section 323 of the Restatement (Second) of Torts," and under this section, "the voluntary undertaking does not create a duty of care unless (a) the undertaker's failure to exercise reasonable care in performing the undertaking increased the risk of harm to the plaintiff, or (b) the plaintiff suffered harm because she relied upon the undertaking."). We hold Gaskins did not assume a duty to notify by making calls in the past because the County is required by statute to adhere to specific notice requirements when using pesticides. Further, Appellants were the only beekeepers who reported damage after the spray. We find neither Gaskins nor the County increased the risk of harm by failing to call beekeepers individually because the proper notice and procedures were followed pursuant to the Act. Although Gaskins admitted he made a mistake when he called the incorrect number prior to the spray, we nevertheless find he was acting with reasonable care. The County satisfied its only notice duty by issuing the press release and complying with all other statutory requirements as highlighted in the Clemson Investigation. Prior to 2016, the County had never conducted aerial sprays for mosquitoes. Accordingly, there is no history of Gaskins' previous actions because an aerial spray had never been conducted. His previous calls to local beekeepers only took place before truck sprays, and he did

---

[4] "[T]he 'mere scintilla' standard does not apply under Rule 56(c)." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023).

them as a courtesy in addition to the statutorily mandated notice requirement from the Regulations. We hold Gaskins did not assume, and thus violate, a duty to personally notify local beekeepers prior to pesticide sprays. *See Dorrell v. S.C. Dep't of Transp.*, 361 S.C. 312, 318, 605 S.E.2d 12, 15 (2004) (In an action alleging negligence, "a plaintiff must show (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered injury or damages."); *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135–36, 638 S.E.2d 650, 656 (2006) ("If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law.")

### b. *Application of S.C. Code Ann. § 15-78-60(4)*

Even if Gaskins created a duty, which we hold he did not, we nevertheless find the negligence claim is barred pursuant to section 15-78-60(4). Appellants contend that section 15-78-60(4) is not applicable as Gaskins' practice of personally notifying local beekeepers of sprays was never "codified as a law, or as a written policy having the force of law." However, subsection 4 specifically states that the applicability is not limited to the examples written in the section.

Here, we find the circuit court properly determined that even if Gaskins' actions created a duty on behalf of the County, the TCA, specifically, section 15-78-60(4) was applicable and barred Appellants' claims. The purpose of the TCA and its immunity sections is to protect governmental entities from liability when acting in the course of their governmental duty. *See* S.C. Code Ann. § 15-78-20(b) (2005) (providing the TCA is the "exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents . . ."). The TCA was designed to protect governmental entities from excessive liability and it is to be liberally construed in favor of limiting the liability of governmental entities. *See Steinke v. S.C. Dep't of Lab., Licensing & Regul.*, 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999) (holding "[p]rovisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed in favor of limiting liability.") We do not find the legislature intended for immunity to apply under the TCA only if the policy is codified as law or written policy, and that is evidenced in the statutory language "but not limited to" and applied in a similar context in *Repko*. *See White v. State*, 375 S.C. 1, 7, 649 S.E.2d 172, 175 (Ct. App. 2007) ("In construing a statute, this Court should not consider the particular clause being construed in isolation, but we should read the clause in conjunction with the purpose of the whole statute and the policy of the law."). Even if Gaskins voluntarily assumed a duty through his prior calls, the negligence

claim is still barred pursuant to section 15-78-60(4). *See Repko*, 424 S.C. at 500, 818 S.E.2d at 747 (finding there was a dispute as to whether regulations created a private duty of care owed by the county to Repko; however, declining to resolve that dispute because "even if such a duty was created, the County is immune from liability to Repko under subsection 15-78-60(4) of the TCA"). We hold the circuit court properly granted summary judgment as to Appellants' negligence claims.

## 2. Trespass Claim

Appellants argue the circuit court erred in granting the County's motion for summary judgment as to their trespass claim when the evidence shows the County intended to trespass, though it may not have intended or foreseen the consequences of the trespass. We disagree.

We acknowledge the affirmative act—flying the plane over the designated areas to spray for mosquitoes. *See Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991) ("To constitute an actionable trespass, [ ] there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion."). However, we do not find the invasion was intentional nor was it conclusively proven that the harm caused— the bee deaths—were the direct result of that invasion. The death of Appellants' bees was unintentional. *See id.* ("Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act.") The County's stated objective was to abate mosquitoes to prevent the spread of the virus, and it took specific measures to avoid the death of the bees. It issued a press release to a wide array of media outlets prior to the spray, hired an experienced pilot, and provided him with a map of the beehive locations to avoid. There was no intention on the part of the County to spray the beekeeper locations, and it took the necessary steps to avoid damage. Following careful consideration, the County selected, and was authorized to conduct, a common practice employed throughout the state and neighboring counties. Further, the Clemson Investigation concluded the aerial spray was properly conducted pursuant to the Act and did not violate any of the Regulations. Accordingly, we hold the circuit court did not err in granting summary judgment as to the trespass claim.

Based on the foregoing, the order of the circuit court is

**AFFIRMED.**[5]

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**